## GENERAL MILLS, INC. v. COMMISSIONER OF TAXATION.

199 N. W. 2d 636.

July 21, 1972—No. 43175.

*Warren Spannaus*, Attorney General, and *John R. Kenefick*, Deputy Attorney General, for relator.

*Johnson & Eastlund, Ralph W. Peterson,* and *David C. Priebe,* for respondent.

OTIS, JUSTICE.

The issue before us is whether the Tax Court erred in holding exempt from personal property taxation under Minn. St. 1969, § 272.02(11)(b), a computer and certain tools and machinery used by General Mills for quality control, research, and repair in its technical laboratory. We hold that the evidence supports the conclusion of the Tax Court and affirm.

The commissioner of taxation levied a tax on the property here in dispute. The Tax Court reversed, and the matter is before us on certiorari. This assessment occurred on May 1, 1968, and was governed by § 272.02(11)(b), which provided an exemption as follows:

"Tools and machinery which by law is considered as personal property used or useable in construction of buildings or highways or in the manufacture, processing, production, sale or distribution of marketable products including but not limited to goods, wares and merchandise and processing of food and fiber."[1]

The parties have stipulated to the facts.

1. At the time of this assessment, General Mills owned a Honeywell Series 1800 computer system, the uses of which are set forth in the stipulation as follows:

"a.   To accumulate from regional offices daily product orders transmitted by teletype throughout the United States.

---

[1] This case has little value as precedent since the statute has now been amended to exempt all tools and machinery by Ex. Sess. L. 1971, c. 31, art. 22, § 3, which provides in part as follows: "The taxpayer shall be exempted with respect to, * * * tools and machinery which by law are considered as personal property, except personal property which is part of an electric generating, transmission, or distribution system or a pipeline system transporting or distributing water, gas, or petroleum products."

"b. To transmit daily product orders to production facilities throughout the United States, printing out customer names, type and quantities of product ordered, shipment date, and freight car and/or truck loading patterns.

"c. To process shipment data transmitted from said production facilities, compare and conform the data to the customer order, and prepare the customers' invoices.

"d. To prepare daily, weekly and monthly reports for management showing orders filed by sales regions, by product, by plant, and other detail information.

"e. To transmit to the plants levels of raw materials and finished products located therein in order that the production may be matched with orders.

"f. To prepare bills of lading covering each rail shipment of product.

"g. To trace the movement of rail cars carrying product ascertaining if schedules are in fact being met.

"h. To determine inventory levels in pool cars (cars which contain product for more than one customer) and product at distribution warehouses tracing the movement of pool cars from plant to customer.

"i. To prepare for the sales department delivery statistics, monthly recap of all deliveries by product, size, flavor, cases comparing program with actual sales by regions and zones."

The parties have agreed that the computer was used 90 percent of the time for the purposes indicated and 10 percent of the time for purely administrative purposes. The commissioner raises on appeal for the first time the question of apportionment. Since this was not a matter addressed to the Tax Court, we decline to consider the question.

The commissioner argues that the computer is not used for "sale or distribution of marketable products" but for remotely related reports and statistics. The Tax Court pointed out that the computer is used principally for order handling, order writing, and customer invoicing. The court held the exemption was

warranted by reason of the fact the equipment was an integral and necessary part of the sales and distribution process. We agree. The computer at the manufacturing level can be equated with a cash register at the retail level—which the commissioner concedes would be tax-exempt. We have no difficulty in holding that, for the uses indicated, the computer is an integral part of the taxpayer's sale and distribution process.

2. The remainder of the tools and machinery which is the subject of this litigation consisted of facilities to maintain quality control, equipment for research and development, and tools and machinery designed to keep such equipment in repair. The parties have stipulated that the personal property in this category was used for the following purposes:

"a. Development of new products for sales marketing and distribution by Appellant generally for public use or consumption.

"b. Development of improvements to be made for products which Appellant was on that date selling and marketing.

"c. Examine and improve production facilities used in producing products being sold and marketed by Appellant.

"d. Resolve problems arising in and from the production facilities then being used to produce products for sale by Appellant."

The Tax Court held that the term "useable" in the statute did not describe the nature of the tools and machinery but rather their actual use on the assessment date. The tools and machinery used in quality control and research were found by the Tax Court to be an integral and necessary part of the manufacturing and production process. Such equipment consisted in part of a "mockup" of the actual production line. The taxpayer argues that as such it was in fact usable for production. The commissioner, on the other hand, takes the position that the Tax Court was not warranted in testing the exemption by whether the equipment was a part of the manufacturing *process* since that

concept is far broader than what was intended by the use of the words "manufacture" or "production." Nearly all equipment, the commissioner points out, is part of the process but only the equipment which actually makes the product was intended to be exempted.

We concur in the Tax Court's view that equipment used for product development or product control is included within the meaning of the words "manufacture" and "production." The laboratory for developing products, testing products, and controlling quality is certainly an essential part of the manufacturing of food products. To narrow the exemption to the equipment actually used in turning out the packaged food is a restriction which is unwarranted by the language of the statute. We find nothing to justify the conclusion that the legislature intended to confine the exemption in this manner. We are persuaded by the argument that the word "production" envisions a limited function of turning out the finished article, while the word "manufacture" contemplates the whole process of experiment, research, and development in a much broader scope. Consequently, we hold that the Tax Court was correct in exempting tools and machinery used in research and for quality control.

Affirmed.

MR. JUSTICE MURPHY and MR. JUSTICE TODD took no part in the consideration or decision of this case.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.