## COUNTY OF HENNEPIN v. HONEYWELL, INC.

210 N. W. 2d 38.

August 10, 1973—No. 43709.

*Haverstock, Gray, Plant, Mooty & Anderson, Kenneth M. Anderson,* and *Craig L. Vollmar,* for appellant.

*George M. Scott,* County Attorney, and *David E. Mikkelson,* Assistant County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment of the District Court of Hennepin County involving the denial of exemption from personal property taxes of property owned by defendant as of May 1, 1967.

Following publication by plaintiff county of a delinquent personal property tax list, defendant filed an answer contesting the assessment of personal property taxes on certain electronic data processing equipment owned by defendant and leased to customers in Hennepin County. The trial court held such property was taxable. Judgment was entered and defendant appeals from the judgment.

The sole question here is whether the property involved is exempt from taxes under Minn. St. 1969, § 272.02(11)(a). The

facts have been stipulated by the parties. While the stipulation is quite lengthy, a summary of it will suffice for this decision.

The parties have stipulated that electronic data processing (EDP) equipment is owned by defendant and leased to customers within Hennepin County. They have stipulated to the value of the equipment and the amount of tax involved if the property is subject to personal property taxes. They have also stipulated that defendant timely made an election under § 272.02(11) to exempt the property defined under § 272.02(11)(a).

The EDP equipment involved is complex and costly, with prices ranging from $100,000 to $6,000,000. Defendant sells the equipment directly; but, on account of the cost, potential obsolescence, and competition in the field, defendant also offered the equipment to its customers on a lease basis. Its desire was to sell as much of the equipment as possible, and it set up its leases and sales incentive programs so as to maximize sales.

The lease program was arranged so that 45 months' rental was approximately equal to the purchase price. The leases contain elaborate purchase options, so that a percentage of the rental fees could be applied to the purchase price if the lessee chose to purchase the equipment. While the stipulation provides that some of the leased equipment is subsequently sold and some is returned to defendant, defendant's branch manager of its Twin Cities data processing operations testified that all rental customers in 1967 subsequently purchased part or all of their equipment.

As long as the lessee pays the stipulated rental for the equipment, he retains the right of possession, so it cannot be sold to another customer. Defendant offered to prove that the state's agent in an income tax audit had advised that the leased EDP equipment should be considered inventory for income tax purposes, but this evidence was ruled inadmissible on the grounds of relevancy.

Minn. St. 1969, § 272.02(11), provided in relevant part:

"The taxpayer shall elect whether to be exempted with respect to category (a) or (b) as hereinafter defined.

"(a)    All inventories, stocks of merchandise of all sorts, manufacturers material, manufactured articles including the inventories of manufacturers, wholesalers, retailers and contractors; * * *

"(b)    Tools and machinery which by law is considered as personal property used or useable in construction of buildings or highways or in the manufacture, processing, production, sale or distribution of marketable products including but not limited to goods, wares and merchandise and processing of food and fiber."

Plaintiff and the trial court were of the opinion that Olson Equipment Co. v. City of Minneapolis, 285 Minn. 146, 171 N. W. 2d 717 (1969), is controlling. In that case we held that construction equipment purchased by Olson and leased to others under an agreement that 100 percent of the rental paid could be credited to the purchase price if lessee decided to buy did not come within the exclusion provided by § 272.02(11)(a) and therefore was taxable to Olson. We there said (285 Minn. 148, 171 N. W. 2d 718):

"* * * The foremost concept in the word [inventory] as it is used in the Tax Reform and Relief Act * * * is an availability for sale in the ordinary course of business. The definitions in the authorities cited by both appellant and respondents likewise seem to establish this as a common denominator.

"Olson contends that its leased equipment fulfills the test of being available for sale because it is at all times willing to sell a leased item, either to the lessee or to others. Its power to sell the leased equipment to others is limited, however, by the fact that the lessee is entitled to retain the equipment as long as he pays the rent or otherwise meets the terms of the lease. To include equipment which is not salable to the general public in the category of exemptible inventory would, we think, obfuscate the most reasonable meaning of the term."

Defendant seeks to distinguish the facts in Olson from those now before us, and contends that if the cases cannot be distinguished, Olson was incorrectly decided and should be reexamined. Much of the argument defendant presents in seeking to distinguish the two cases is that while Olson dealt only with the term "inventory," defendant seeks to come within the broader definition in the statute, which includes "stocks of merchandise of all sorts, manufacturers material, manufactured articles including the inventories of manufacturers, wholesalers, retailers and contractors."

An examination of the record and briefs in Olson discloses that much the same arguments were made in that case as are made here. Defendant's contention that Olson did not deal with a marketing effort of ultimate sale to the lessee is also rebutted in the briefs in the Olson case. Testimony virtually identical to that in the instant case was elicited in Olson on the marketing objectives of the Olson Equipment Company. The sole remaining distinction—that Olson did not manufacture the leased equipment and therefore it could not come within the terms of "manufacturers material" or "manufactured articles"—is not persuasive. We are dealing here with completely fabricated equipment which cannot be described as "manufacturers material" or "manufactured articles" after it is either sold or leased under the kind of agreement we are dealing with.

We are not persuaded that Olson can be distinguished from the case before us nor are we convinced that it should be reconsidered or overruled.

Defendant next seeks to equate the definition of "inventory" in our tax act with that found in the Uniform Commercial Code (UCC).

Even if we disregard the different purposes of the two acts, Minn. St. 336.9—109 of the Uniform Commercial Code defines inventory as follows:

"Goods are

* * * * *

"(4) 'inventory' if they are *held by a person who holds them for sale or lease* or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment." (Italics supplied.)

Even under this definition the crucial words are emphasized above. Surely, if the goods are sold they are no longer held for sale; and if they are leased under an agreement whereby possession is lost and the owner can no longer lease them to anyone else without the consent of the lessee, they are no longer *held* for lease, any more than they are held for sale after they are actually sold.

Our attention has been called to a 1956 report of the UCC Editorial Board where it was said:

"Reason: In Subsection (4) the definition of 'inventory' is broadened to include goods held by a debtor for lease as well as for sale, and goods which had been furnished under a contract of service or lease."

Here, again, the crucial word is "held" and, as we have said above, the goods are not *held* for sale or lease when the right to possession is lost.

In its brief, defendant says:

"The history of Article 9—109(4) makes it crystal clear that the drafters of the U.C.C. intended to include leased goods within the definition of 'inventory'."

We think this is probably true so long as the goods are *held* by the owner for the purpose of leasing them. But under our tax laws, and irrespective of what the meanings are under the UCC, we are convinced that once the right to lease the property is gone it is no longer inventory nor does it come within the exemption involved in this case.

Some difficulty is encountered in reconciling Olson with Transport Leasing Corp. v. State, 294 Minn. 134, 199 N. W. 2d

817 (1972), and General Mills, Inc. v. Commr. of Taxation, 294 Minn. 175, 199 N. W. 2d 636 (1972). Olson is distinguished in the Transport Leasing case because in the latter the taxpayer declared its election to claim exemption of its property under either § 272.02(11)(a) or § 272.02(11)(b). We held the election valid and the exemption granted under § 272.02(11)(b) properly applied. In the case now before us, the taxpayer elected to come under clause (a), claiming the equipment was inventory, or, at least, that it came within the statutory property exempt under that clause. Whether the property would be exempt, under the Transport Leasing case, if the taxpayer had elected to come under (b), we need not now determine. It elected to come under (a) and the case was tried on that theory. It may be unfortunate that the taxpayer did not elect alternatively to come under either (a) or (b) as did the taxpayer in the Transport Leasing case, but we cannot change the theory of the case at this stage.

Finally, it must be kept in mind that in comparing the language of our tax statute with that of the UCC the rule is that a statute creating an exemption from taxation must be strictly construed. The presumption is against exemption and "the burden of proof is on the one seeking the exemption to establish that he is entitled to [it]." Camping and Education Foundation v. State, 282 Minn. 245, 250, 164 N. W. 2d 369, 372 (1969); Ramaley v. City of St. Paul, 226 Minn. 406, 33 N. W. 2d 19 (1948).

The facts of this case are controlled by Olson and we have not been persuaded that we should overrule that decision.

Affirmed.

Mr. Justice Yetka and Mr. Justice Scott, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.