ALAN ZIPERSTEIN ET AL. *v.* TAX COMMISSIONER OF THE STATE OF CONNECTICUT

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued May 10—decision released July 24, 1979

*Robert L. Klein,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Ralph G. Murphy* and *Richard K. Greenberg,* assistant attorneys general, for the appellant (defendant).

*Jonathan E. Silbert,* for the appellee (plaintiff).

LONGO, J. On December 6, 1974, the state tax commissioner denied a claim for a refund of certain sales taxes paid during the period from 1971 through 1974 filed by the plaintiff Richard Sachter, doing business as Glastonbury Dairy Queen. Following a hearing before the defendant tax commissioner, the claim was again denied. The plaintiff taxpayer, claiming aggrievement, appealed to the Court of Common Pleas.[1] The trial court sustained the plaintiff's appeal and the tax commissioner has appealed to this court from the judgment rendered.

The uncontested facts are disclosed in the court's finding: The plaintiff owns and operates a Dairy Queen establishment and sells such products as ice milk (in the form of cones, sundaes and milk-

---

[1] This action was previously filed on August 12, 1975 by Alan Ziperstein on behalf of the individually and company-owned outlets of Burger King, Inc.; McDonald's, Inc.; Hardee's, Inc.; Dunkin Donuts, Inc.; Lum's, Inc.; Carvel, Inc.; Dairy Queen, Inc.; and Friendly's Ice Cream Corporation, Inc. The present plaintiff Richard Sachter, doing business as Glastonbury Dairy Queen, was substituted for all prior plaintiffs, and is proceeding in his individual capacity. The decision of the trial court concerned only the claims of Sachter against the tax commissioner.

shakes), soda and icy slush under the brand name of "Mr. Misty." The process of preparing the ice milk for sale consists of taking a commercially prepared liquid mixture of sugar, corn syrup and additives, and, by the use of machinery, whipping air into the mixture and then passing it through refrigerating machinery so that it is frozen and maintained in that condition. The processes involved are powered by electricity. The commissioner of consumer protection issued a retail license to manufacture frozen desserts pursuant to General Statutes § 19-197; all sales made are at retail. The plaintiff's premises contain no seating tables, seating facilities, or sanitary or bathroom facilities for customers. The plaintiff and his employees deliver manufactured products to customers over the counter only. The cost of the products used in the making of desserts constitutes two-thirds of the total cost of materials used in the business. One-third of the building's area is devoted to customers, and the remaining area is devoted to the processing of products which takes more than 50 percent of the personnel's time. The electricity used in the building is used mainly for the production of the plaintiff's products.

From the evidence presented at trial, the court concluded that the plaintiff's establishment is primarily engaged in a process of manufacturing tangible personal property for sale in the regular course of business and is generally recognized as such; accordingly, the plaintiff was, pursuant to statute, entitled to the claimed refund of sales tax imposed upon the electricity used in the preparation and sale of the products sold by the plaintiff. The sole issue on this appeal is whether the electricity used by the plaintiff in the operation of the Dairy

Queen outlet is "used and consumed directly in . . . an industrial plant in the actual fabrication of the finished product to be sold" and thus exempt from the state sales tax on utility charges during the period pertinent to this appeal under General Statutes § 12-412 (r).

Our analysis proceeds initially with the recognition of the settled rule that statutes which grant exemptions from taxation must be strictly construed against the taxpayer and in favor of the taxing authority. *Wiegand* v. *Heffernan,* 170 Conn. 567, 582, 368 A.2d 103 (1976); *Modugno* v. *Tax Commissioner,* 174 Conn. 419, 421, 389 A.2d 745 (1978); and "no claimant is entitled to an exemption unless he satisfies all the statutory requirements." *Renz* v. *Munroe,* 162 Conn. 559, 562, 295 A.2d 558 (1972); see *Crescent Beach Assn.* v. *East Lyme,* 170 Conn. 66, 71, 363 A.2d 1045 (1976); *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 599, 362 A.2d 847 (1975); *McLaughlin* v. *Poucher,* 127 Conn. 441, 444, 17 A.2d 767 (1941); *Klein* v. *Bridgeport,* 125 Conn. 129, 131, 3 A.2d 675 (1939); 85 C.J.S., Taxation, § 1098. For the purposes of the present case, the statutory requirements for a sales and use tax exemption are set forth in the following manner: General Statutes § 12-412 provides in pertinent part, "EXEMPTIONS. Taxes imposed by this chapter shall not apply to the gross receipts from the sale of . . . the following items . . . (r) . . . fuel or any substitute therefor . . . used in production . . . which are consumed and used directly . . . in an *industrial plant* in the actual fabrication of the finished product to be sold." [2]   (Emphasis added.) "[Regs., Conn. State Agencies] Sec. 12-426-11 (a).

[2] Public Acts 1973, No. 73-288, § 4 removed the words "and consumed directly" from this section.

GENERAL STATEMENT OF EXEMPTION. The tax does not apply to sales of and the storage, use or other consumption of . . . fuel . . . used in production . . . which are used and consumed directly in . . . an industrial plant in the actual fabrication of tangible personal property to be sold in the regular course of business. . . ."

A review of the statute and regulations makes clear that in order to be entitled to an exemption, the plaintiff's business must constitute an "industrial plant." Thus, under Sec. 12-426-11 (g) of the state agency tax department regulations,[3] which regulation defines that term and carries the force and effect of law; *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 154, 285 A.2d 352 (1971); the plaintiff was required to show that his business is (1) "primarily engaged" in a (2) "process of manufacturing" (3) tangible personal property in a business which is (4) "generally recognized" as a business described in the regulation.

The defendant's argument is posited in relation to regulation Sec. 12-426-11 (g), and is three-pronged; the defendant claims that the plaintiff's business is not an "industrial plant" entitled to an exemption under General Statutes § 12-412 (r) because: (1) the plaintiff is not engaged in a "process of manufacturing"; (2) even if some aspects of the plaintiff's business constitute a "process of manufacturing," the plaintiff is not "primarily engaged" in such a process; and (3) the plaintiff's business

---

[3] "[Regs., Conn. State Agencies] Sec. 12-426-11 (g). INDUSTRIAL PLANT. An 'industrial plant' shall mean an establishment primarily engaged in a process of manufacturing tangible personal property for sale in the regular course of business and generally recognized' as such. . . ."

is not "generally recognized" as an industrial plant engaging in a manufacturing process. We cannot agree.

Although the tax department regulations define the term "actual fabrication,"[4] the regulations do not define the term "process of manufacturing" as used in Sec. 12-426-11 (g) of the regulations defining "industrial plant." The term "manufacturer," however, has been variously defined in broad terms as one who processes raw material; *Sayles Biltmore Bleacheries, Inc.* v. *Johnson,* 266 N.C. 692, 694, 147 S.E.2d 177 (1966); and one "who prepares the original substance for use in different forms"; *State* v. *American Creosote Works,* 163 La. 547, 548, 112 So. 412 (1927). Webster defines the word "manufacture" as: "Something made from raw materials by hand or by machinery; . . . the process or operation of making wares or other material products by hand or by machinery; . . . a productive industry using mechanical power and machinery; . . . the act or process of making, inventing, devising, or fashioning." "Manufacturing" is defined as: "(1) to make (as raw material) into a product suitable for use (the wood . . . is manufactured into fine cabinet work) (2) to make from raw materials by hand or machinery." "Manufacturer" is defined as: "an employer of workers in manufacturing . . . one who changes the form of a commodity, or who creates a new commodity." Other lexicographers agree with the Webster definitions. Ballantine, Law Dictionary (3d Ed. 1969) p. 773; Bouvier, Law Dictionary (Rawle 3d Rev., 8th Ed. 1914) p. 2086; 55

---

[4] "[Regs., Conn. State Agencies] Sec. 12-426-11 (i). ACTUAL FABRICATION. The term 'actual fabrication' as used herein shall mean: that exclusive part of a manufacturing process through which a new quality or use is directly given to materials by the labor of man or through such labor applied through the agency of machinery."

C.J.S., Manufactures § 1, p. 672; see also *Sayles Biltmore Bleacheries, Inc.* v. *Johnson,* supra, 694; annots., 34 A.L.R. 535, 544; 10 A.L.R. 1273, 1276. In order to constitute a "process of manufacturing," there must be some form of procedure whereby original material is transformed, converted, fashioned, or reduced, either by action of human hands or by machinery, or it may be a chemical or assembly process devised or directed by human hands. See *Assessors of Boston* v. *Commissioner of Corporations and Taxation,* 323 Mass. 730, 84 N.E.2d 129 (1949); *Commonwealth* v. *Peerless Paper Specialty, Inc.,* 344 Pa. 283, 25 A.2d 323 (1942); 55 C.J.S., Manufactures § 3c (1), p. 682. Numerous cases have held that where there is a finished product materially different from an original material in substance, general condition or quality, which change has been brought by human or artificial labor such that the article is enhanced in its value and use, the evolution constitutes a "process of manufacturing," and that the person or corporation which works the change is a manufacturer. See 71 Am. Jur. 2d, State and Local Taxation §§ 193, 355–359; 34 Am. Jur. 2d, Federal Taxation §§ 8875–8906; annot., "What Constitutes Manufacturing and Who is a Manufacturer under Tax Laws," 17 A.L.R.3d 7 §§ 3, 6, pp. 22–30.

Applying these principles to the present case, we are of the opinion that the process resulting in the production of the plaintiff's products involves a "process of manufacturing" within Sec. 12-426-11 (g) of the state tax department regulations. The plaintiff's ice milk is produced by taking a commercially prepared liquid mixture of sugar, corn syrup and other items, and whipping air into the mixture and passing it through refrigerating

machinery so that it is frozen and maintained in that state. The plaintiff's "slush" or "Mr. Misty" drink is made by mixing water, sugar, flavoring and chemical additives in a walk-in cooler where the product is stored until pumped from a machine. In each case, raw materials are transformed from an intrinsically valueless state into a finished product which has an enhanced value and use; the ice milk product thus produced is clearly a new and different product from the raw product. Where a statute or regulation does not define a term, it is appropriate to focus upon its common understanding as expressed in the law and upon its dictionary meaning. *The Hearst Corporation* v. *State Department of Assessments & Taxation,* 269 Md. 625, 308 A.2d 679 (1973). It is apparent that the plaintiff's process may be commonly understood as a process of manufacturing. Moreover, although the cases differ, the majority of cases we have examined have held that the production, on a commercial scale, of ice cream, ice milk and similar milk products constitutes a "process of manufacturing" for the purposes of particular sales and use tax statutes. Compare *Roberts* v. *Bowers,* 170 Ohio St. 99, 162 N.E.2d 858 (1959), with *Jer-Zee, Inc.* v. *Bowers,* 163 Ohio St. 31, 125 N.E.2d 195 (1955); *Reeves* v. *Fenley's Model Dairy, Inc.,* 314 Ky. 380, 235 S.W.2d 995 (1951); *Rieck-McJunkin Dairy Co.* v. *School District of Pittsburgh,* 362 Pa. 13, 66 A.2d 295 (1949); *The Isaly Dairy Co. of Pittsburgh* v. *City of Pittsburgh,* 379 Pa. 108, 108 A.2d 728 (1954); *Ballard* v. *Kentwood Ice Mfg. & Bottling Works, Ltd.,* 147 La. 583, 85 So. 598 (1920); cf. *General Mills, Inc.* v. *Commissioner of Taxation,* 294 Minn. 175, 199 N.W.2d 636 (1972); *State* v. *Try-Me Bottling Co.,* 257 Ala. 128, 57 So. 2d 537 (1952); see generally, annot., 17

A.L.R.3d, supra § 29[c]; 71 Am. Jur. 2d, State and Local Taxation § 358; 55 C.J.S., Manufactures § 4k, pp. 694-95. There was no error in the conclusion of the trial court that the plaintiff was engaged in a "process of manufacturing."

The defendant next contends that even assuming that the plaintiff is engaged in a "process of manufacturing," he is nonetheless not "primarily" so engaged and thus not entitled to the statutory "utility exemption," General Statutes Sec. 12-412 (r) for industrial plants, as defined by regulation Sec. 12-426-11 (g). Based on the unassailed findings of the trial court, we must reject this argument. The plaintiff's business premises contain no seating facilities, no tables and no sanitary or bathroom facilities; the plaintiff sells products over the counter only; over two-thirds of the premises are devoted to the manufacturing of the plaintiff's products while one-third is devoted to customers; the plaintiff and his employees spend more than 50 percent of their time processing products for sale; the costs of the products used in the manufacturing of desserts constitute two-thirds of the total cost of materials used in the business, and electricity consumed in the building is primarily used for the manufacturing of the plaintiff's products. "Primarily" is defined as meaning "mainly" or "principally." Webster, New World Dictionary (Second College Edition); see *Friedman Textile Co.* v. *Northland Shopping Center, Inc.*, 321 S.W.2d 9, 15 (Mo. App. 1959). The character of the business as "primarily" engaged in manufacturing a product is not diluted by the fact the product is thereafter sold; *Phillips* v. *Byers,* 189 Cal. 665, 209 P. 557 (1922); *Grantham* v. *City of Chickasha,* 156 Okla. 56, 9 P.2d 747 (1932); and from the nature of the

plaintiff's business, as outlined above, the court's conclusion that the plaintiff was primarily engaged in a manufacturing process, having been legally, logically and consistently drawn from the facts found, must stand. *Hartford Accident & Indemnity Co.* v. *S. Windsor Bank & Trust Co.,* 171 Conn. 63, 70, 368 A.2d 76 (1976).

The defendant finally asserts that the plaintiff fails to qualify for the § 12-412 (r) exemption because the plaintiff's business is not, within § 12-426-11 (g) of the tax department regulations, "generally recognized" as a manufacturing concern. One consideration in the trial court's conclusion that the business was "generally recognized" as a manufacturing concern is its finding that the commissioner of consumer protection had issued to the plaintiff a retail license to *manufacture* frozen desserts pursuant to General Statutes § 19-197. The trial court could properly have concluded that the licensing of the plaintiff as a manufacturer of desserts was significantly probative of the way in which at least the state of Connecticut perceives the nature of the plaintiff's business. While this factor alone is not dispositive of the issue, when considered in light of the plaintiff's evidence elaborately describing the process by which its products were produced, the physical layout of the business premises, and the substantially greater amount of time spent by the plaintiff in making, as opposed to selling his products, and in light of the fact that the defendant offered no evidence at trial tending to show that the plaintiff was not generally recognized as a manufacturer; cf. *McDonald's Corporation* v. *Oklahoma Tax Commission,* 563 P.2d 635 (Okla. 1977); the trial court's conclusion, supported by the facts found, must stand.

While we conclude that the plaintiff's business constitutes an "industrial plant" entitled to the sales tax exemption provided by General Statutes § 12-412 (r), we must note that the position taken by the tax commissioner against the exemption is of more than passing importance. The statutory exemption and corresponding regulations may well have first been enacted in 1948; see Public Acts, Spec. Sess., Feb., 1948, No. 1, § 7; to promote the general welfare of the state by inducing new industries to locate here and to foster the expansion and development of existing industries. There is, however, no documented legislative history which would shed light on the purpose that the exemption was intended to serve. In a case such as this, where the plaintiff's business appears to fall squarely within the exemption provided by an unambiguous statute, as defined by plainly written regulations, our individual appraisal of the wisdom of the course selected by the legislature must be put aside. We do not sit as revisors of statutes, and once the meaning of an enactment is discerned, the judicial process comes to an end.

There is no error.

In this opinion the other judges concurred.