[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Violet Shiek brought a suit in negligence against the defendants Michael Vittorio, Robert Vittorio, the City of Bridgeport and the Bridgeport Hydraulic Company for personal injuries.
She claims that on the night of August 23, 1985, she fell after tripping on a pipe protruding in a sidewalk area in front of 1992-1996 East Main Street, Bridgeport, Connecticut. Plaintiff alleges that the pipe was defective in that it rose about four to five inches above the sidewalk, so that she tripped on it as she got out of her parked car and walked around to the rear of her vehicle onto the sidewalk area.
The plaintiff in her third count claims that her accident and claimed injuries resulted from the negligence and carelessness of the Bridgeport Hydraulic Company in that it owned the pipe and maintained the pipe yet failed to remedy its CT Page 7625 defective state or warn pedestrian traffic of its dangerous and hazardous condition. The defendant Bridgeport Hydraulic Company generally denied that it owned and maintained that pipe in question and generally denied all claims of negligence.
The defendant Bridgeport Hydraulic Company has moved for summary judgment on the basis that it owed no duty to maintain the pipe in question; therefore, it owed no duty to this plaintiff; and, owing no duty, cannot be liable in negligence.
 I.
In support of the motion, the Bridgeport Hydraulic Company submitted:
(1) the affidavit of Robert Donnelly, the superintendent of Construction Service in the Operations Division of the Bridgeport Hydraulic Company. He asserts that under the regulations of the Department of Public Utility Control (DPUC) and the company rules and regulations (a copy of which rules was also submitted by the defendant company), a property owner owns the water meter pit and curb boxes such as the one located at 1992-1946 East Main Street in Bridgeport and bears the responsibility for its maintenance and control. Based on his review of records and to the best of his knowledge and belief, the "pipe" described by Violet Shiek is known as a curb box. Again, to the best of his knowledge, information and belief, the Bridgeport hydraulic Company did not maintain, service or otherwise have any involvement with said curb box at 1992-1996 East Main Street.
(2) Deposition excerpts from Ronald Breen, who purchased the property in question in September, 1985 from the defendants Vittorio. He had called the attention of one or both of the Vittorio brothers to the protruding pipe before the plaintiff, his mother, tripped over it and noted that sometime after the accident one of the brothers cut off the pipe protrusion. He learned that the pipe was a cold water shut off to the house.
(3) Deposition excerpts from the plaintiff, Violet Sheik, indicating her fall over a metal object as she stepped up on the curb.
The gist of the claim of no duty is that the Bridgeport Hydraulic Company neither owns nor maintains the pipe in question and that this is clear from the regulations of the DPUC and from the affidavit of Robert Donnelly, Construction Supervisor at Bridgeport Hydraulic Company.
The defendant Hydraulic Company postulates that the pipe described by the plaintiff in her complaint and at her deposition is a "curb box" a device used to shut off water CT Page 7626 service to the structure at 1992-1996 East Main Street.
Such a curb box is the property of the water customer and is maintained by that water customer, according to the regulations of the DPUC and according to the contract between the water company and its customer,
Regulation Section 16-11-62 (4) reads as follows:
 . . . the customer at his own expense shall furnish, install, own and maintain the necessary curb box and the service pipe from the curb stop to the place of consumption and shall keep them in good repair and in accordance with reasonable requirements of the utility.
 This regulation has been in effect since 1966 and assigns ownership of the curb box and the duty to maintain the curb box to the water customer.
The defendant company asserts that the authority for this regulation is based on General Statutes Section 16-11.
Section 16-11 provides:
 The department of public utility control shall, so far as is practicable, keep fully informed as to the condition of the plant, equipment and manner of operation of all public service companies in respect to their adequacy and suitability to accomplish the duties imposed upon such companies by law and in respect to their relation to the safety of the public and of the employees of such companies. The department may order such reasonable improvements, repairs or alterations in such plant or equipment, or such changes in the manner of operation, as may be reasonably necessary if the public interest. The general purpose of this section and sections 16, 19, 16-25, 16-43 and 16-47 are to assure to the state of Connecticut it full powers to regulate its public service companies, to increase the powers of the department of public utility control and to promote local control of the public service companies of this state, and said sections shall be so construed as to effectuate these purposes.
Connecticut General Statutes, Section 16-6b gives the DPUC authority to adopt regulations with respect, inter alia, to the service and conduct of operations of public service companies. The DPUC has adopted regulations.
Connecticut General Statutes, Section 16-1 (4) provides that a water Company is a public service company. The DPUC has CT Page 7627 adopted regulations governing the services and conduct of water companies. The defendant Bridgeport Hydraulic Company is such a utility regulated by the DPUC.
Since it is Connecticut Administrative Agency Regulation Section 16-11-62 which provides who owns what and who maintains what insofar as the services and conduct of operations of water companies and since that regulation provides, as cited, that the customer at his own expense shall furnish, install, own and maintain the necessary curb box and the service pipe from the curb stop to the place of consumption and shall keep them in good repair and in-accordance with the reasonable requirements of the utility, the defendant Hydraulic Company claims this validly enacted regulation of an administrative agency carries the force of statutory law. Griffin Hospital v. Commission on Hospitals and Health Care, 200 Conn. 489, 497, 512 A.2d 199
(1986); Salmon Brook Convalescent Home v. Commission on Hospital and Health Care, 177 Conn. 356, 363, 417 A.2d 358 (1979); Roy v. Centennial Ins. Co., 171 Conn. 463, 473, 370 A.2d 1011 (1976); Sager v. GAB Business Services, Inc., 11 Conn. App. 693,529 A.2d 226 (1987).
Because Section 16-11-62 uses the word "shall" in describing the customer's duties of furnishing, installing, maintaining and repairing the curb box, the Hydraulic Company asserts that the responsibility rests upon the customer-homeowner and not the Company. "Where a statute or regulation does not define a term, it is appropriate to focus upon its common understanding as expressed in the law and upon its dictionary meaning." Zipperstein v. Tax Commissioner,178 Conn. 493, 500, 423 A.2d 129 (1979). The word shall in statutes has been construed to impose a mandatory duty. Graham v. Zimmerman, 181 Conn. 367, 371, 435 A.2d 996 (1980).
Furthermore, the defendant Company asserts that the "contract" between the Hydraulic Company and its water customer echoes the DPUC's policies and also define the ownership and maintenance responsibilities for such curb boxes. In the Hydraulic Company's Rules and Regulations it states that the water customer "shall furnish, install, own and maintain at his own expense the necessary curb box and service line from the curb stop to the place of consumption. .". These rules are claimed to be part of the contract between the company and its customers, such as the Vitorrios.
Further, the Company asserts that from the deposition of Ronald Breen, it is clear that the Vittorios exerted control over the pipe by remedying the alleged defect after plaintiff's accident in order to close on the sale of the house to Mr. Breen. CT Page 7628
Therefore, the moving defendant concludes that if a court were to construe the responsibilities other than claimed by the company, it would be rewriting the contract between the water utility and the customer and frustrating the clear mandates of the DPUC. See, Hatcho Corporation v. Della Pietra, 195 Conn. 18,21, 485 A.2d 1285 (1985).
 II.
The plaintiff has filed a memorandum and supporting documents in opposition to the motion. The plaintiff iterates that in a motion for summary judgment, the moving party has the burden of establishing the absence of any genuine issue as to all of the material facts which, under applicable principles of substantive law, entitled him to a judgment as a matter of law. To satisfy this burden, the party moving for summary judgment must make a showing that it is quite clear what the truth is and must exclude any real doubt as to the existence of any genuine issue of material fact. United Oil Company v. Urban Redevelopment Commission, 158 Conn. 364, 378-79, 260 A.2d 596
(1969). Further, because of the burden on the moving party, the evidence must be viewed in the light most favorable to the plaintiff. Evans Products Co. v. Clinton Building Supply, Inc.,174 Conn. 512, 516, 391 A.2d 157 (1978).
The plaintiff submitted disclosures by the defendant company that it installed a water tap to the premises in 1929. The plaintiff also submitted a deed to the Vittorio brothers showing their purchase of the property in 1985.
The defendant Hydraulic Company argues that the contract between the company and its water customer defines the ownership and maintenance responsibility for curb boxes. The issue of control as between itself and its homeowner customer is raised as well as under what circumstances duties are owed to the plaintiff. Because, no contract or agreement between the Hydraulic Company and the Vittorios was submitted or no other form of agreement was presented, the plaintiff urges that a question of fact as to ownership and a question of fact as to control exits.
Moreover, the plaintiff notes that the defendant Hydraulic Company claims the "contract" between itself and the co-defendants in some unexplained manner affects a third party — plaintiff Shiek. CT Page 7629
Since no contract between the Hydraulic Company and the Vittorios was submitted in evidence, if there is a claim of an implied contract in law or fact, that itself is a factual issue. This is because what the Company is really asserting is a claim of possible indemnification by the Vittorios in favor of the company. Therrien v. Safeguard Manufacturing Company, 180 Conn. 91, 94-95, 429 A.2d 808 (1980); Brighenti v. New Britain Shirt Corporation, 167 Conn. 403, 406,356 A.2d 181 (1974).
Moreover, the plaintiff claims that Connecticut General Statutes, Section 16-11 states the DPUC shall keep fully informed [on all aspects of public service companies] not only in respect to their adequacy and suitability to accomplish the duties imposed upon such companies by law but also, "in respect to their relation to the safety of the public. .". Thus a statutory duty is imposed on the defendant to avoid harm to the public from ones act or failure to act. Calderwood v. Bender,189 Conn. 580, 584, 457 A.2d 313 (1983). The plaintiff urges that it follows that the company did owe the plaintiff a duty to maintain its operations in a manner that would protect the plaintiff's safety and interest.
The plaintiff asserts there are issues of fact, as well as inferences that can be drawn from those issues, as to ownership and maintenance of the pipe in question, as to control of the area where the pipe is located, as to a duty, arising under statute 16-11, which is owed to the plaintiff as a member of the promote, inter alia, public safety. The plaintiff erroneously construes this broad statute into some specific legal obligation on the company with reference to negligence actions.
 III.
The Hydraulic Company addresses these claims of the plaintiff. First, it is not relevant that the company did in fact in stall the curb box and water service so as to raise an issue of fact, since the DPUC regulation 16-11-62(4) requires the water customers to maintain a curb box and not the company.
As to the plaintiff's argument that a contract relationship cannot alleged tortious conduct toward a nonparty to the contract like the plaintiff, Violet Shiek, and that the contract, at most, raises the issue of whether the company has a right of indemnity from the water customer, the company responds that the contracts between it in its water customers merely restate the legal duty imposed on water customers by DPUC regulation 1-11-24(4). Validly enacted regulations carry the force of statutory law, Griffin Hospital v. Commission on Hospitals and Health Care, 200 Conn. 489,497, 512 A.2d 199 (1986), a violation of which is negligence per se. Citerella v. United Illuminating Co., 158 Conn. 600, 608,266 A.2d 382 (1969).
As to plaintiff's argument that a duty is somehow imposed on the Hydraulic Company to the plaintiff through Connecticut General Statutes, Section 16-11, that section only states that the DPUC shall inform the utilities on how to improve their plant, equipment and manner of operation to promote, inter alia, public safety. The plaintiff erroneously construes this broad statute into some specific legal obligation on the company with reference to negligence actions.
 IV.
The defendants Vittorio have filed a memorandum in objection to the motion for summary judgment. The defendant Hydraulic Company has objected to any consideration being given to their memorandum since it claims they have no standing to challenge the instant motion. Despite this claim by the Hydraulic Company, this court is of the opinion that by its motion, the company has put into issue its lack of duty towards the plaintiff and its consequent lack of liability while asserting that any duty concerning the pipe in issue is owed by the defendants Vittorio and any liability is theirs to bear. It necessarily follows that those defendants have a right to request their arguments be considered in adjudication of the issue, since they have a personal stake in the outcome.
These defendants note that the plaintiff in her complaint claimed that she sustained personal injury as a result of the negligence of the Hydraulic Company in that the company had knowledge of the pipe being in a dangerous condition yet, nevertheless, allowed it to remain in a defective condition. The plaintiff further claims that the company was negligent in that: "it failed to warn pedestrians of said condition; it failed to maintain the area; it failed to remedy the defective CT Page 7630 condition."
The defendants Vittorio address the Hydraulic Company's assertion in its motion that it had no duty to maintain the pipe which is the subject of the plaintiff's claim because of the regulations of the DPUC. Apparently, the company is arguing that the DPUC has adopted regulations which delegate to a residential homeowner the duty to "furnish, install, own and maintain" a so-called curb box. The Hydraulic Company claims that the plaintiff alleged that the pipe she tripped over was a "curb box." The Hydraulic Company defines a "curb box" as a "device to shut off water service." The Hydraulic Company fails to assert the source of this definition. The DPUC regulations do not define it. There is no reference in the plaintiff's complaint to a"curb box." There is no indication in the plaintiff's deposition that the pipe she tripped over was a "curb box." Whether or not the defective pipe in question was a "curb box" presents a substantial question of fact, which only the jury should determine.
The defendants Vittorio state the reason for this important distinction is demonstrated in the regulations. Section 16-11-62 (2) provides that "the utility shall furnish, install, own and maintain at its expense all replacement of service Connections. . ." Section 16-11-62 (3) provides that the service connections include "the service pipe from the main to the curb stop, at or adjacent to the street line or the customer's property line and such other valves, fittings, etc., . . ." There has been no evidence proferred which establishes that the pipe over which the plaintiff allegedly tripped was a curb box, a service connection, a service pipe or some other fitting. This is a factual issue for the jury to determine. These defendants go on to claim that even assuming, arguendo, that the defective pipe over which the plaintiff tripped was a "curb box," there is still no indication that the legislature intended to cloak the DPUC with such broad authority to assign residential homeowners the duty to "furnish, install, own and maintain" the same. Statutes granting power to administrative agencies are strictly construed as concerning only those powers granted expressly or by necessary implication. Walker v. Luther,839 F.2d 1208 (2d Cir. Conn. 1987). Section 16-6b provides that:
 The DPUC may, in accordance with chapter 54 adopt such regulations with respect to rates and charges, services, accounting practices, safety and the conduct of the operations generally of public service companies subject to its jurisdiction as it deems reasonable and necessary. After consultation with the secretary of the office of policy and management, the department CT Page 7631 may also adopt regulations establishing standards for systems utilizing congeneration technology and renewable fuel resources.
An administrative agency's authority to promulgate regulations is limited by the enabling statute. Salmon Brook Convalescent Home v. Commissioner on Hospitals and Health Care,177 Conn. 356, 353, 417 A.2d 358 (1979). Furthermore, a public authority cannot delegate its duty of repair and maintenance absent express legislative authorization. 39 Am.Jur.2d Highways, Streets and Bridges, Sec. 430.
Nowhere in the enabling statute was the DPUC given authority to adopt regulations shifting the burden of liability from the public water authorities to residential homeowners. The statute limits its authority to regulate to "rates and charges, services, accounting practices, safety and the conduct of the operations generally of public service companies." Absent such express authority there is a genuine issue of material fact concerning the Hydraulic Company's responsibility to maintain the area which is the subject of this lawsuit. There is ample room for disbelief to exist in the minds of the jury. Yanow v. Teal Industries, Inc., 178 Conn. 263, 268-69,422 A.2d 311 (1979). There is certainly not any exclusion of real doubt as to the existence of any genuine issue of material fact. Plouffe v. New York, N.H. H.R. Co., 160 Conn. 482, 488,280 A.2d 359 (1971).
Furthermore, basic contract law demonstrates that a contract is an agreement between two or more persons consisting of a promise or mutual promises which the law will enforce, or the performance of which the law in some way recognizes as a duty. There must be an unequivocal acceptance of an offer to create a contract. Bridgeport Pipe Engineering Company v. DeMatteo Construction Company, 159 Conn. 242, 246, 268 A.2d 391
(1970).
The Vittorios claim, by affidavit filed, that they never had an discussion with the water company, with the DPUC, or anyone else concerning maintaining the water equipment. They never received any agreement or contract or copy of regulations concerning the ownership and maintenance of equipment. Even a contract implied in fact depends on actual agreement and here there was none between the parties. Therrien v. Safeguard Manufacturing Company, 180 Conn. 91, 429 A.2d 808 (1980).
As to the company's claim that the duty to maintain this equipment was "assigned" to the homeowners by the DPUC, the defendants Vittorio reiterate that, in exceeding the limitations of the enabling statute, that department had no authority to CT Page 7632 assign this responsibility to private homeowners.
The Hydraulic Company addresses these claims by asserting that the only evidence submitted in connection with this motion is the evidence of its expert that the pipe is a "curb box." So, while the defendants Vittorio argue that it is question of fact as to the identity of what the plaintiff tripped on, disagreeing that the pipe was a curb box because the plaintiff never called it such in her complaint or deposition, the Vittorios offered no evidence or counter-affidavits to refute the fact that this is a "curb box."
Again, the Vittorios argue that the regulation is invalid because it exceeds the authority of Connecticut General Statutes, Section 16-6b. This argument, claims the company, is itself invalid. Connecticut General Statutes, Section 16-6b
gives the DPUC authority to adopt regulations with respect to . . .safety and the conduct of the operations generally of public service companies subject to its jurisdiction as it deems reasonable and necessary. The department has ample authority to adopt such regulations as in issue here, because it rationally deemed them reasonable and necessary. In any event, the claim that the validity of the DPUC regulation is a question of fact that must go to the jury for determination is clearly mistaken. The authority of the DPUC is a pure question of administrative law which should be decided under the procedures of the Uniform Administrative Procedures Act; but which is, in any event, a question of law and not of fact.
Finally, the claim of the defendants Vittorio that they had not accepted any contract concerning the maintenance of the pipe is of no moment. Since the contract, the rules of the company, merely restates their duty imposed by law as a result of the DPUC regulations.
 V.
While the court agrees with the defendant company's contention that the issue of the validity of the DPUC regulations placing on the homeowner the burden of maintaining a curb box is essentially a question of law rather than of fact, that issue need not be reached because the court is of the opinion that the affidavit of Robert Donnelly, filed by the defendant Hydraulic Company, is inadequate to show the absence of any genuine issue as to all the material facts, which would entitle the company to a judgment as a matter of law.
As the defendants Vittorio point out, Section 16-11-62 (2) provides that "the utility shall furnish, install, own and maintain at its expense all replacement of service Connections. . ." Section 16-11-62 (3) provides that the service connections include "the service pipe from the main to the curb stop, at or adjacent to the street line or the customer's CT Page 7633 property line and such other valves, fittings, etc., . . ." In the court's opinion, the evidence proferred does not establish that the pipe, which is uncontested to be part of the water supply system to the premises and over which the plaintiff allegedly tripped was a curb box, as opposed to service connection, a service pipe or some other fitting. This is a factual issue for the jury to determine.
While the plaintiff and the defendants Vittorio have submitted no evidence in support of any claim that the pipe over which the plaintiff claims to have tripped was other than a "curb box," this does not bar the opposing parties from attacking the sufficiency of the moving party's affidavits. Evans Products Co. v. Clinton Building Supply Company, supra, 513-14. "It is especially appropriate to hold an affidavit submitted by a moving party to a stringent standard. Because he burden is on the movant, the evidence must be viewed in the light most favorable to the nonmovant and he is given the benefit of all favorable inferences that can be drawn." Evans Products Co. v. Clinton Building Supply Company, supra, at 516, citing United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 380, 260 A.2d 596.
Assuming Mr. Donnelly's interpretation of the DPUC regulations and the Hydraulic Company's Rules and Regulations expressed in paragraph 4 is correct, the operative paragraphs of the affidavit are numbers 5 and 6. These paragraphs are conclusory and give no basis for the conclusions on which the court could make a finding that the defendant company would be entitled to a directed verdict. Farrell v. Farrell, 182 Conn. 34,438 A.2d 415 (1980). There is no averment of personal examination or personal knowledge of the pipe, except a claim of information and belief. Moreover, the allegation in paragraph 6 that the "Bridgeport Hydraulic Company did not . . . have any involvement with said curb box. . .," appears to be contradicted by the documents supplied by the defendant company and filed with her memorandum by the plaintiff.
The motion for summary judgment is denied.
NIGRO, J.