**UNITED POWER ASSOCIATION, Respondent,**

v.

**COMMISSIONER OF REVENUE, Relator.**

**UNITED POWER ASSOCIATION, Petitioner, Respondent,**

v.

**STATE of Minnesota, County of Sherburne, Relators.**

No. C5–91–1561.

Supreme Court of Minnesota.

April 17, 1992.

Hubert H. Humphrey, III, Atty. Gen., Jerilyn K. Aune, Sp. Asst. Atty. Gen., St. Paul, and Thomas D. Hayes, Sherburne County Atty., Kathleen A. Heaney, Asst. County Atty., Elk River, for relators.

Harold H. Sheff, Smith, Gendler, Shiell & Sheff, Minneapolis, and Michelle J. Ulrich, St. Paul, for respondent.

## OPINION

GARDEBRING, Justice.

This case presents two issues of statutory construction. The questions presented are (1) whether the tax exemption for pollution abatement property under Minn. Stat. § 272.02, subd. 1(9) extends to a storage building for refuse derived fuel (hereinafter RDF) and the enclosed conveyor system that transports the RDF from the storage building to the building where actual combustion occurs, and (2) whether Minn.Stat. § 272.02, subd. 7 limits any tax exemption that might be due under subd. 1(9). We hold that the tax exemption under der Minn.Stat. § 272.02, subd. 1(9) extends to a storage building and conveyor system which are integral parts of an RDF burning facility. We further hold that while Minn.Stat. § 272.02, subd. 7 may be a limitation on the exemption under subd. 1(9), the limitation is not so broad as to exclude the storage building and conveyor system at issue in this case. We affirm the decision of the tax court.

Respondent burns RDF at its Elk River plant to generate electricity. The combustion facility was originally a coal-burning

plant, but was modified to burn RDF, which is mixed municipal solid waste that has been processed into a form suitable for burning. The mixed municipal solid waste which is now burned at the Elk River RDF plant for purposes of energy recovery would have otherwise been disposed of at a number of area landfills. The processing of the waste into RDF, which has the consistency of shredded paper, is performed by a separate company about two miles away from respondent's plant. That company then trucks the material to respondent's storage building, where it usually is left to dry for more efficient burning. At the storage building, the RDF is dumped either onto the floor or a "walking floor conveyor." That conveyor deposits RDF onto an elevating apron conveyor, which in turn deposits the RDF onto the main belt conveyor, an enclosed system that carries the RDF to a separate building containing the combustion facility. In that building, it is dumped into a vibrating surge bin, then discharged onto a "vibratory conveyor" that leads to activated metering bins for the individual boilers. From these bins, the RDF is deposited on a feeder conveyor, from which it is blown into the boilers.

Minn.Stat. § 272.02, subd. 1 (1988), which governs the taxable years at issue,[1] provides, in relevant part:

> All property described in this section to the extent herein limited shall be exempt from taxation.
>
> \*   \*   \*   \*   \*   \*
>
> (9) Real and personal property used primarily for the abatement and control of air, water, or land pollution to the extent that it is so used, other than real property used primarily as a solid waste disposal site.
>
> Any taxpayer requesting exemption of all or a portion of any equipment or device, or part thereof, operated primarily for the control or abatement of air or water pollution shall file an application with the commissioner of revenue. The equipment or device shall meet standards, rules, or criteria prescribed by the Minnesota pollution control agency, and must be installed or operated in accordance with a permit or order issued by that agency. The Minnesota pollution control agency shall upon request of the commissioner furnish information or advice to the commissioner. On determining that property qualifies for exemption, the commissioner shall issue an order exempting the property from taxation. The equipment or device shall continue to be exempt from taxation as long as the permit issued by the Minnesota pollution control agency remains in effect.

Minn.Stat. § 272.02, subd. 1 (1988).

Following the procedure outlined in Minn.Stat. § 272.02, subd. 1(9), on December 7, 1989, respondent petitioned the Commissioner of Revenue and requested an exemption for the entire facility from the 1989 property tax assessment, for taxes payable in 1990. The commissioner requested the advice of the Minnesota Pollution Control Agency (hereinafter MPCA), and the MPCA advised that the entire facility be exempt. The commissioner granted an exemption for all of respondent's facility except the access road, the storage building and the conveyor system. The property at issue had a taxable value of $5,537,517. Respondent then separately sued the state and Sherburne County, petitioning in district court for a review of the 1989 property tax assessment. Respondent also appealed the commissioner's decision on the storage building and conveyor system to the tax court. By stipulation, the exemption issues in the two actions were consol-

---

**1.** The first paragraph of Minn.Stat. § 272.02, subd. 1(9) was changed in 1989 to provide:

> Personal property used primarily for the abatement and control of air, water, or land pollution to the extent that it is so used, and real property which is used primarily for abatement and control of air, water, or land pollution as part of an agricultural operation or as part of an electric generation system.

> For purposes of this clause, personal property includes ponderous machinery and equipment used in a business or production activity that at common law is considered real property.

Minn.Stat. § 272.02, subd. 1(9) (1990). That provision applies to taxes payable in and after 1991. Act of September 27–29, 1989, 1990 Minn.Laws, 1989 Spec.Sess., ch. 1, art. 3, § 35.

idated for hearing before the tax court. At the hearing, respondent conceded that the road was not exempt. The tax court granted summary judgment in favor of respondent.

▮ The tax court found that respondent's facility was tax exempt under the general language of Minn.Stat. § 272.02, subd. 1(9) and the more specific language of subd. 7(a)(1)(i). "Review of Tax Court determinations is generally limited to determining whether there is sufficient evidence to support the Tax Court's decision. Although review of questions of fact is limited, this court has plenary power with respect to questions of law." *Nagaraja v. Commissioner of Revenue*, 352 N.W.2d 373, 376 (Minn.1984) (citations omitted). In filing cross motions for summary judgment the parties agreed that the only issues in dispute were ones of statutory construction. Questions of statutory construction are questions of law, and thus are subject to *de novo* review. *Sorenson v. St. Paul Ramsey Medical Ctr.*, 457 N.W.2d 188, 190 (Minn.1990).

▮ The relators argue that the tax court erred because (A) respondent's property was not used primarily for pollution abatement and control; (B) respondent failed to show the extent to which the facilities were used for pollution abatement or control, leaving open the possibility of partial taxability; and (C) respondent failed to show that the property satisfied MPCA standards as required in subd. 1(9). In short, they argue that the property in question is not sufficiently related to a pollution abatement effort to warrant the tax relief afforded by the statute.

In previous cases, this court has rejected the kind of narrow construction advanced by the relators. *See General Mills, Inc., v. Comm'r of Taxation*, 294 Minn. 175, 176–78, 199 N.W.2d 636, 637–38 (1972) (computer qualifies as tax-exempt tool or machinery used in the manufacture and process-ing of marketable goods). When the legislature has designated a type of property as exempt, this court has extended the exemption to necessary and integral property, and property reasonably necessary to carry out the purpose of the exempt property. *See Abbott–Northwestern Hosp., Inc. v. County of Hennepin*, 389 N.W.2d 916, 919 (Minn.1986) (on-site lodging facility shares hospital exemption); and *Victory Lutheran Church v. County of Hennepin*, 373 N.W.2d 279, 280–81 (Minn.1985) (adjacent custodians' residence shares church exemption).

In this case as well, we reject the relators' narrow argument. It is technically true that the storage facility and conveyor system are designed to store and convey, functions which viewed in isolation do not abate pollution. But as the tax court noted, when the RDF burning facility is in operation, the storage and conveyor facilities are an integral part of the RDF burning process, which does abate pollution. The legislature has expressly declared that it is the policy of the state to make landfilling of solid waste the lowest priority of waste management activities, and to improve waste management through the recovery of energy from waste. Minn.Stat. § 115A.02 (Supp.1991). To argue that an integral part of the RDF handling and combustion facility, which as a whole is designed to provide an alternative to solid waste landfilling and to recover energy from the waste, does not abate pollution, is to take a short-sighted, overly technical view of the statute, a view which ignores the clear direction of the legislature.

Furthermore, it is clear that the building and at least portions of the conveyor system are also required for a narrower pollution abatement effort, the control of "fugitive" air emissions.[2] The MPCA permit[3] issued to respondent for the operation of the RDF facility specifically requires that all RDF stockpiles be stored in a permanent building and that respondent control

---

2. Fugitive emissions are defined as "pollutant discharges that could not reasonably pass through a stack, chimney, or other functionally equivalent opening." Minn.R. 7005.0100, subp. 11c (1991).

3. While respondent's permit was not a part of the record below, we take judicial notice of it as a matter of public record.

avoidable amounts of fugitive emissions through the application of all "reasonable measures."

For these reasons, we decline to apply the relators' rigid and overly technical construction of the statute.

■ The relators' second argument also lacks merit. There is no evidence to suggest that the storage and conveyor facilities are used for anything besides storage and conveying of RDF. It is true that when they are idle they are not abating pollution, but neither are they used for some purpose that contravenes subd. 1(9). The relators' argument would appear to suggest that full tax exemptions are available only for facilities that operate 24 hours a day, and in other cases the exemption is apportioned according to hours of operation. That would create an enforcement nightmare and certainly is not contemplated by the statute.

The relators' third argument on this issue must also fail. The argument is that respondent failed to show that it satisfied all standards, rules and criteria of the MPCA, as required by paragraph 2 of subd. 1(9). The relators may be technically correct because the tax court made no specific finding on the issue. But that oversight seems inconsequential because the record clearly shows that the MPCA evaluated respondent's proposed exemption and recommended that it be granted. We are confident the MPCA would not have given its blessing, and perhaps could not legally have done so, if the facilities were substandard or not in compliance with regulations.

■ In sum, we believe it is clear that the tax exemption for pollution abatement equipment under Minn.Stat. § 272.02, subd. 1(9) applies to respondent's storage building and conveyor system. The remaining issue, which really is the crux of this case, is whether respondent's exemption survived when the legislature amended Minn. Stat. § 272.02 in 1989 by adding subd. 7. That subdivision provides:

**Pollution abatement property.** Property, including real property, qualifies as exempt pollution abatement property under subdivision 1, clause (9), if the following conditions are satisfied.

(a)(1) The property is part of a refuse derived fuel facility converted from a coal burning electric generation facility and the property consists of:

(i) boiler modifications necessary to efficient handling and burning of refuse derived fuel and transfer of heat produced by combustion of the fuel;

(ii) ash handling and storage systems, such as vacuum-pneumatic equipment, conveyors, crushers, and storage buildings to remove, convey, process, and temporarily store bottom and fly ash from the burning of refuse derived fuel;

(iii) control systems, such as computers, to control the operation of equipment described in clauses (i) to (iv) and other pollution abatement equipment; and

(iv) equipment to monitor emissions into the air and combustion efficiency; or

(2) the property is a solid waste resource recovery mass burn facility.

(b) The facility was constructed and will be operated under a contractual arrangement providing for payment, in whole or part, of the property tax on the property by a political subdivision of the state.

Minn.Stat. § 272.02, subd. 7 (1990).

The tax court found that besides being tax exempt under the general provisions of subd. 1(9), respondent's storage and conveyor facilities qualified for exemption under subd. 7(a)(1)(i) as "boiler modifications necessary to efficient handling and burning of refuse derived fuel."

The relators contend that the tax court erred in classifying the storage building and conveyor system as "boiler modifications," arguing that the statute plainly lists the portions of an RDF facility which are to be exempted and that storage buildings and conveyor systems are not among those so listed. The relators' argument is based on the rule of statutory construction which indicates that "[n]o room for judicial con-

struction exists when the statute speaks for itself." *Comm'r of Revenue v. Richardson*, 302 N.W.2d 23, 26 (Minn.1981). Further, *"[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded* under the pretext of pursuing the spirit." *Id.* (emphasis in original) (citing Minn.Stat. § 645.16 (1978)).

Respondent relies on the recommendation from the MPCA, which said that "although this property is not explicitly addressed as exempt in the statutes, it is an integral part of the modifications necessary for efficient handling of RDF." Respondent also points to an industry listing of "boiler plant equipment," which includes storage and handling equipment. The relators respond that "boiler plant equipment" is not synonymous with "boiler modifications."

The relators are correct to the extent that it seems strained to classify the storage building and conveyor system as "boiler modifications." If that were all the statute said, we would agree that the plain language would negate respondent's sought-after exemption. But subd. 7 actually refers to "boiler modifications necessary to the efficient handling and burning of RDF." Giving the statutory words their plain meanings, "efficient handling" reflects a process that is distinct from boiler operations. Boilers *burn* fuel; they do not *handle* it. By including "efficient handling" in the statutory scheme, it is clear that the legislature intended for the tax exemption to extend beyond the actual heat-generating mechanism. What is not so clear is how far the exemption was intended to extend.

At the very least, the legislature's decision to combine the concepts of "boiler modifications" and "efficient handling" creates an ambiguity in the statute. As a result, the relators' argument as to the "plain meaning" of the statute must fail because the statute does not speak plainly.

To resolve this ambiguity, we must apply principles of statutory construction to discern the legislature's intent.

■ As the relators correctly note, there is a presumption that all property is taxable, and exemptions are to be strictly construed. *Camping & Educ. Found. v. State*, 282 Minn. 245, 250, 164 N.W.2d 369, 372 (1969). *See also* Minn.Stat. § 645.17(2) (1990). But the legislature has said that "[e]very law shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16 (1990). In this case, if we construe the tax exemption under subd. 7 as strictly as urged by the relators, we would not give proper effect to the provision's language regarding "efficient handling."

The legislature has offered these additional words of guidance:

When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

(1) The occasion and necessity for the law;

(2) The circumstances under which it was enacted;

(3) The mischief to be remedied;

(4) The object to be attained;

(5) The former law, if any, including other laws upon the same or similar subjects;

(6) The consequences of a particular interpretation;

(7) The contemporaneous legislative history [4]; and

(8) Legislative and administrative interpretations of the statute.

Minn.Stat. § 645.16. The tax court looked at the statutory scheme of Minn.Stat. § 272.02, subd. 1(9) and subd. 7 and concluded that the legislature did not intend to limit the tax exemption in the manner suggested by the relators. We agree. It is clear that the legislature's purpose in enacting Minn.Stat. § 272.02 was to promote the use of property for pollution abatement

---

**4.** The parties stated at oral argument that they have been unable to find any contemporary legislative history on the issues presented by this case, and our independent research has been similarly unfruitful.

by creating tax incentives for the conversion of coal-fired power plants to RDF facilities, thus making use of the energy locked within the fuel and lessening the need for expansion of landfills. And it is equally clear that respondent's facility serves that purpose.

It is less clear how subd. 7 was intended to affect respondent's exemption, if at all. But in analyzing the setting in which Minn. Stat. § 272.02 was adopted and amended, and giving force to all of the statute's words, we believe that while the legislature may have intended to limit the broad language of "pollution abatement facilities" under subd. 1(9), it did not intend to limit it so far as to deny an exemption to respondent's storage and conveyor facilities when they are integral parts of the RDF facility. If the legislature intended to limit the exemption in such a manner, it could have done so in clear language. But it did not, and we are left to conclude that respondent's exemption claim must prevail.[5]

Because we hold that respondent is entitled to a tax exemption for its storage building and conveyor system, we need not reach respondent's claim that denial of the exemptions would violate its fourteenth amendment right to equal protection of the laws.

Affirmed.

---

**5.** The tax court rejected the narrow construction urged by the relators, in part, on the basis that the commissioner had gone beyond the strict statutory requirements by granting exemptions to the control system that operates respondent's conveyor system and the dust control system in respondent's facility. At oral argument, the relators claimed that those exemptions were granted in error. Since our decision relies solely on the language and apparent intent of the statute, we do not address that issue.