Stop 'N Save, Inc., et al. *v.* Department
of Revenue Services
(13673)

Peters, C. J., Callahan, Glass, Covello and Hull, Js.

Argued June 9—decision released August 8, 1989

*Alan M. Kosloff,* with whom, on the brief, was *Meryl Spat,* legal intern, for the appellants (plaintiffs).

*Jonathon L. Ensign,* assistant attorney general, with whom were *Richard K. Greenberg,* assistant attorney general, and, on the brief, *Clarine Nardi Riddle,* acting attorney general, and *Carl J. Schuman,* assistant attorney general, for the appellee (defendant).

CALLAHAN, J. This is an appeal by Stop 'N Save, Inc., and Waterbury Public Markets, Inc. (taxpayers), from a decision of the Superior Court dismissing their appeal from the assessment of sales and use taxes by the department of revenue services (department) for the period June 1, 1982, through May 31, 1985. The sales and use taxes in question were assessed against the taxpayers for machinery used in the production of baked goods at their in-store bakeries.[1] The taxpayers disputed the department's assessments against them claiming that the machinery assessed was exempt from sales and use taxes under General Statutes § 12-412 (34)[2]

---

[1] The appeal also protested the assessment of sales and use tax on "materials" used in the taxpayers' bakeries. See General Statutes § 12-412 (18). In its brief, however, the department states that it levied an assessment of sales and use taxes *only* on "machinery." See General Statutes § 12-412 (34). The exemption under § 12-412 (34) is therefore the only exemption at issue in this case.

[2] General Statutes § 12-412 (34) provides: "MACHINERY USED IN MANUFACTURING OR AGRICULTURAL PRODUCTION. Sales of and the storage, use or other consumption of machinery used directly in a manufacturing or agricultural production process. The word 'machinery' as used in this subsection means the basic machine itself, including all of its component parts and contrivances, such as belts, pulleys, shafts, moving parts, operating structures and all equipment or devices used or required to control, regulate or operate the machinery, but excluding office equipment or data processing equipment other than numerically controlled machinery used directly in the manufacturing process."

because it was used directly in a "manufacturing production process." After a hearing, the department refused to revise its assessment and the taxpayers appealed to the Superior Court pursuant to § 12-422.[3] The Superior Court dismissed the taxpayers' appeal and the taxpayers subsequently appealed to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023.

The facts are not in dispute.[4] The taxpayers are supermarkets engaged in the retail sale of food products at various locations in Connecticut. At several of these locations, the taxpayers own and operate bakeries on the premises that produce baked goods for retail sale over the counter to the general public. The taxpayers' bakery operations are carried on in discrete areas of their supermarkets. The machinery upon which

[3] "[General Statutes] Sec. 12-422. APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of six per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which are denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

[4] A stipulation of facts was filed by the parties in the trial court.

the commissioner levied an assessment is utilized solely to mix and bake the ingredients necessary to produce bakery products suitable for sale.

A relatively small portion of the taxpayers' store area and resources is devoted to the production and sale of bakery products. Only 2 to 2.5 percent of the taxpayers' total sales, 3.5 percent of employees' hours, 3.1 percent of the total number of employees, 4.4 percent of floor space and 2.6 percent of the taxpayers' total costs are attributable to their in-store bakery operations.

In correspondence with the taxpayers, the department stated that it refused to revise the assessment against them because "an establishment [in order to qualify for an exemption under § 12-412 (34)] must have manufacturing as its main purpose and be generally recognized to be an industrial plant." The department went on to note that the "baking of the products on the premises does not change the primary purpose of the store as a retail establishment to that of an industrial plant. The manufacturing aspect of the baking is incidental to the retail characteristics and, as a consequence, such establishment is not eligible for exemption."

The Superior Court, in dismissing the taxpayers' appeal, agreed with the department and concluded that "the baking of the products on the premises does not change the primary purpose of the store as a retail establishment to that of an industrial plant." We find no error.

General Statutes § 12-412 (34) provides an exemption from sales and use taxes for the "[s]ales of and the storage, use or other consumption of machinery used directly in a *manufacturing* or agricultural production process." (Emphasis added.) Further, § 12-426-11b (b) (3)[5]

[5] The Regulations of Connecticut State Agencies, § 12-426-11b (b) (3) provides: "The tax does not apply to sales of and the storage, use or other consumption in this state of machinery used in a manufacturing production process or an agricultural production process."

of the Regulations of Connecticut State Agencies provides that "[t]he [sales and use] tax does not apply to sales of and the storage, use or other consumption in this state of machinery used in a *manufacturing production process* . . . ." (Emphasis added.) If, therefore, the taxpayers' bakery operations fit within the definition of a "manufacturing production process," any machinery used in that process would be exempt from sales and use taxes.

Section 12-426-11b (a) (11)[6] of the Regulations of Connecticut State Agencies provides that a " '[m]anufacturing production process' shall mean any one of a series of production activities, beginning with the movement of the raw materials after their receipt, inspection and storage, to the first production machine and ending with the completion of the finished product, including any packaging operations, for its sale to the ultimate consumer. . . . 'Manufacturing production process' *shall occur solely at an industrial plant."* (Emphasis added.) The department concedes that the process by which the taxpayers convert raw materials into finished baked goods is "one of a series of production activities." The department argues, however, that because the taxpayers' activities take place at a supermarket and not at an "industrial plant," the taxpayers are not engaged in a "manufacturing production process" within the meaning of the regulations. We agree.

---

[6] The Regulations of Connecticut State Agencies, § 12-426-11b (a) (11) provides: " 'Manufacturing production process' shall mean any one of a series of production activities, beginning with the movement of the raw materials after their receipt, inspection and storage, to the first production machine and ending with the completion of the finished product, including any packaging operations, for its sale to the ultimate consumer. 'Manufacturing production process' shall not include any activities prior to the first production stage (such as collecting, weighing and storing raw materials) or any activities following the last production stage (such as casing, loading or delivering to the consumer). 'Manufacturing production process' shall occur solely at an industrial plant."

An "industrial plant" is defined in the Regulations of Connecticut State Agencies, § 12-426-11b (a) (7)[7] as "a *manufacturing facility* at which a manufacturing production process is occurring. . . . " (Emphasis added.) The question to be resolved, therefore, is whether the taxpayers' supermarkets containing on-premise bakeries are "manufacturing facilit[ies]" and, therefore, "industrial plant[s]" in which a "manufacturing production process is occurring." If they are, the machinery purchased for use in the taxpayers' bakeries is exempt from the imposition of sales and use taxes. General Statutes § 12-412 (34).

The taxpayers first argue that the department and the trial court applied a regulation repealed in 1980 in order to determine that their supermarkets were not "industrial plants" and therefore did not qualify for an exemption under § 12-412 (34). The taxpayers claim that because the repealed regulation, the former § 12-426-11 (g),[8] embodied a "primary purpose test" to determine whether an establishment was an "industrial plant," its repeal was conclusive evidence that that test was abrogated and could not be used by the department or the trial court to arrive at their respective decisions. After its repeal, § 12-426-11 (g) was replaced by § 12-426-11b (a) (7). As previously noted, § 12-426-11b (a) (7) defines an "industrial plant" as a "manufacturing facility at which a manufactur-

---

[7] The Regulations of Connecticut State Agencies, § 12-426-11b (a) (7) provides: " 'Industrial plant' shall mean a manufacturing facility at which a manufacturing production process is occurring. A quarry shall be considered to be an industrial plant to the extent that its product is sold."

[8] The Regulations of Connecticut State Agencies, § 12-426-11 (g), since repealed, provided: "INDUSTRIAL PLANT. An 'industrial plant' shall mean an establishment primarily engaged in a process of manufacturing tangible personal property for sale in the regular course of business and generally recognized as such. For the purpose of this section 'a quarry' shall be considered an industrial plant to the extent the product is sold."

ing process is occurring." The term "manufacturing facility" in the regulation is not further defined in either the statutes or the regulations. That term, therefore, was required to be interpreted by the trial court to effect a resolution of this case.

We see no reason why, in interpreting the present regulation, the trial court could not have ascribed to the term "manufacturing facility" its ordinary meaning and commonly approved usage. *Connecticut Water Co.* v. *Barbato*, 206 Conn. 337, 345, 537 A.2d 490 (1988); *Kilpatrick* v. *Board of Education*, 206 Conn. 25, 28, 535 A.2d 1311 (1988); *Federal Aviation Administration* v. *Administrator*, 196 Conn. 546, 550, 494 A.2d 564 (1985). The application of that meaning, we conclude, would have required the trial court, as it does this court, to arrive at a result contrary to that espoused by the taxpayers. Indisputably, the ordinary meaning of the term "manufacturing facility" connotes a place where manufacturing is carried on either primarily or exclusively. No disinterested observer would think of a supermarket, containing a bakery section occupying a minute portion of its premises, as a "manufacturing facility" or an "industrial plant." Further, if the taxpayers were to prevail in their contention that a "manufacturing facility" is any place where a manufacturing production process is carried on, it would render superfluous and meaningless the sentence in § 12-426-11b (a) (11), which states that a " '[m]anufacturing production process' shall occur solely at an industrial plant."[9] *Harris Data Communications, Inc.* v. *Heffernan*, 183 Conn. 194, 197, 438 A.2d 1178 (1981); *Green* v. *Freedom of Information Commission*, 178 Conn. 700, 703, 425 A.2d 122 (1979).

---

[9] Further, it could lead to some ludicrous results. The definition of "manufacturing production process" standing alone without the requirement that it take place in an "industrial plant," could encompass cottage industries, i.e., the fabrication of products in the home.

While § 12-426-11 (g) has been repealed, the absence of the word "primarily" from the present regulation does not signify a change in substance in the scope of the exemption. The present regulation continues to require machinery to be used in a "manufacturing production process" that must occur "solely at an industrial plant." The repeal of § 12-426-11 (g) did not delete the word "primarily" from the English language, and absent some indication of legislative or agency intent to the contrary, if its use is appropriate as a component in formulating a reasonable interpretation of an undefined term in the current regulations we see no reason for its prohibition. There is no error in this regard.

The taxpayers next maintain that the interpretation of the term "manufacturing facility" by the department and the trial court to exclude the taxpayers' supermarkets from an exemption constituted a "regulation" promulgated in violation of the Uniform Administrative Procedure Act and was therefore invalid. We disagree.

The ordinary meaning of the terms "manufacturing facility" and "industrial plant" as stated in the regulations renders it at least implicit, if not explicit, that those terms did not apply to supermarkets. *Walker* v. *Commissioner,* 187 Conn. 458, 460–61, 446 A.2d 822 (1982). Further, in defining those terms the department and the trial court, rather than promulgating a "regulation," reasonably interpreted the existing regulations. It is clear that they have the authority to do so. *Quinnipiac Counsel, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities,* 204 Conn. 287, 293 n.5, 528 A.2d 352 (1987); *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 497, 512 A.2d 199 (1986); *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 589, 424

A.2d 285 (1979); *Ouellet* v. *Shapiro,* 3 Conn. Cir. Ct. 268, 272, 212 A.2d 708 (1965); 1 Am. Jur. 2d, Administrative Law § 186 and vol. 2, § 233. We find no merit to this claim of the taxpayers.

Finally, the taxpayers contend that at trial they clearly demonstrated that the department's interpretation of the terms "industrial plant and manufacturing facility was unreasonable." This claim requires no further discussion other than to note that any statute creating a tax exemption must "be strictly construed against the party claiming an exemption"; *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 571, 440 A.2d 767 (1981); and that the taxpayers bore the burden of proving the assessment was in error. *H. B. Sanson, Inc.* v. *Tax Commission,* 187 Conn. 581, 586, 447 A.2d 12 (1982). They failed to sustain that burden.[10]

There is no error.

In this opinion the other justices concurred.

---

[10] The taxpayers reliance on *Ziperstein* v. *Tax Commissioner,* 178 Conn. 493, 423 A.2d 129 (1979), is misplaced. In *Ziperstein,* this court upheld the trial court's determination that the appellee was entitled to an exemption for electricity consumed in fabricating products on premises and sold at retail over-the-counter at a Dairy Queen outlet. *Ziperstein,* however, was decided under the repealed § 12-426-11 (g) of the Regulations of Connecticut State Agencies and the percentage of the appellees' resources and space devoted to manufacturing its product in *Ziperstein* was much greater than that in the present case. Further, although we were unable to locate any legislative history, the timing (1980) indicates that the present regulation, § 12-426-11b (a) (7), was promulgated to make it more difficult for retail outlets to qualify for exemptions as industrial plants.