WDKY–TV, INC., Appellant,

v.

REVENUE CABINET COMMON-
WEALTH OF KENTUCKY,
Appellee.

No. 91–CA–000370–MR.

Court of Appeals of Kentucky.

July 3, 1992.

Thomas J. Luber, Holliday Hopkins Thacker, Louisville, for appellant.

Douglas M. Dowell, Frankfort, for appellee.

Before EMBERTON, JOHNSON and WILHOIT, JJ.

JOHNSON, Judge.

This appeal is from a judgment of the Franklin Circuit Court affirming a decision of the Kentucky Board of Tax Appeals. The Board of Tax Appeals upheld the Revenue Cabinet's (hereinafter referred to as "Cabinet") assessment of use tax against appellant WDKY–TV, Inc. (hereinafter referred to as "WDKY"). The issue before this Court is whether television broadcasting rights may lawfully be taxed under Kentucky's Use Tax statute, KRS 139.310, which imposes a tax on the storage, use, or other consumption in this state of tangible personal property. For the reasons set out below, we hold that the right to broadcast

television programs is not tangible personal property within the meaning of the statute. This is so notwithstanding the fact that transfer of broadcast rights may be accompanied in some instances by transfer of tangible personal property which is taxable under KRS 139.310.

## I. Facts.

Appellant WDKY–TV is an independent television station in Lexington, Kentucky. WDKY primarily broadcasts syndicated programs obtained through syndicators located outside the Commonwealth. By entering into licensing agreements with the syndicators, WDKY receives the exclusive right to broadcast a program in WDKY's market area for a limited number of times over a specified period of time.

Generally, WDKY obtains possession of a program in one of two ways: either by satellite transmission or by videotape transmission. When the image is transmitted via satellite, a station engineer receives the transmission and records it on a videotape purchased and owned by the station. Sales and/or use tax is paid on these videotapes. The Revenue Cabinet does *not*, however, assess use tax on the value of the broadcasting rights. For example, if WDKY pays $25,000 for the right to broadcast a program and $50 for a videotape on which it can record a satellite transmission of that program, then WDKY pays use tax on the $50 tangible asset, but not on the $25,000 intangible asset.

In some instances, however, the syndicator sends the program to be broadcast to WDKY on a videotape. The parties dispute whether these videotapes are then copied before broadcast, but we believe that it makes no difference to the outcome of this case. The Revenue Cabinet argues that when the transfer of broadcast rights is accompanied by transfer of tangible goods all rights connected with the tangible goods can be taxed under KRS 139.310. We disagree and for the reasons set out below reverse.

1. We note that the Legislature does know how to tax the kind of intangible property in question. KRS 132.020(2)(b) places an annual ad valorem tax for state purposes on "[p]atents, trademarks, *copyrights, and licensing* or royalty

## II. The Statute Applies To Tangible Personal Property And Services Involved In The Sale Thereof.

In this case, the Revenue Cabinet has misconstrued the applicable statutes and misapplied them to the facts. The statutes purport to place a tax based on the "sales price" of "tangible personal property." KRS 139.310. " 'Tangible personal property' means personal property which may be seen, weighed, measured, felt or touched, or which is in any other manner perceptible to the senses...." KRS 139.-160. The statutes also provide that the "sales price" of tangible property "means the total amount for which tangible personal property is sold.... The total amount ... includes ... any services that are a part of the sale...." KRS 139.130. This Court sees nothing in the statute which purports to tax intangible property rights, other than the right to services, associated with the transfer of tangible property.[1]

## III. The Statute Must Be Strictly Construed In Favor Of The Taxpayer.

Appellee Revenue Cabinet argues that, "[b]ecause tax assessments are presumed correct, with the burden on the taxpayer to prove otherwise, WDKY, to prevail on appeal, must demonstrate that the evidence compelled factual determinations contrary to those made by the Board." [Citing *Evans Oil & Gas Co. v. Draughn*, Ky., 367 S.W.2d 453 (1963); *Blankenship v. Lloyd Blankenship Coal Co.*, Ky., 463 S.W.2d 62 (1970); *Property Valuation Adm'r v. Ben Schore*, Ky.App., 736 S.W.2d 29 (1987)]. This is not a correct statement of the standard of review on appeal. "Assessment," as used in the cases cited by appellee, is a term of art referring to the *value* of the property taxed. In the present case, the value of the property is undisputed. The parties' disagreement concerns the *nature* of the property taxed, *i.e.*, tangible or intangible.[2]

*agreements, relating thereto."* [Emphasis added.]

2. In any case, we note that the Revenue Cabinet presented no evidence whatsoever before the

The substantial evidence test is not the standard of review to be applied in this case since the case pertains to a question of law, not a question of fact. In *Epsilon Trading Co. v. Revenue Cabinet*, Ky.App., 775 S.W.2d 937, 940 (1989), the Court stated:

> It is well settled that a reviewing court may not substitute its judgment for that of an administrative board as a finder of fact. However, the substantial evidence test pertains only to questions of fact, not to questions of law. An erroneous application of the law by an administrative board or by the circuit court is clearly reviewable by this Court. Also, *where an administrative body has misapplied the legal effect of the facts, courts are not bound to accept the legal conclusions of the administrative body.* [Citations omitted, emphasis added.]

The Highest Court in this Commonwealth adopted the general rule of resolving doubtful language in statutes imposing taxes in favor of the taxpayer in *City of Maysville v. Maysville Street Railway & Transfer Company*, 128 Ky. 673, 682, 108 S.W. 960, 962, 32 Ky.Law Rep. 1366 (1908), wherein it stated: "It is elementary that taxing laws will not be enlarged by intendment, and no property will be held as embraced within the terms of a taxing statute by mere implication. To impose taxes on property requires a clear and explicit command of the sovereign power; and the courts will never strain a taxing statute in order to make it embrace property which would otherwise not fall within its purview."

Nearly a century later, the appellate courts of this Commonwealth have correctly continued to apply this elementary rule of tax imposition. *See Commonwealth v. Southern Railway Company*, 193 Ky. 474, 237 S.W. 11 (1921); *Martin v. F.H. Bee Shows, Inc.*, 271 Ky. 822, 113 S.W.2d 448 (1938); *George v. Scent*, Ky., 346 S.W.2d 784 (1961).

In *George v. Scent, supra* at 789, the Court stated:

> Taxing laws should be plain and precise, for they impose a burden upon the people. That imposition should be explicitly and distinctly revealed. If the Legislature fails so to express its intention and meaning, it is the function of the judiciary to construe the statute strictly and resolve doubts and ambiguities in favor of the taxpayer and against the taxing powers. *This is particularly so in the matter of pointing out the subjects to be taxed.* [Citations omitted, emphasis added.]

*See First Nat. Bank of Springfield v. Dept. of Revenue*, 85 Ill.2d 84, 51 Ill.Dec. 667, 421 N.E.2d 175 (1981); *KTVO, Inc. v. Bair*, 255 N.W.2d 111 (Iowa 1977); *First Nat. Bank of Fort Worth v. Bullock*, 584 S.W.2d 548 (Tex.Civ.App.1979); *Janesville Data Center, Inc. v. Wis. Dept. of Rev.*, 84 Wis.2d 341, 267 N.W.2d 656 (1978).

## IV. Broadcast Rights Are Intangible Property Not Taxable Under the Statute.

The Revenue Cabinet concedes that, by itself, the right to broadcast copyrighted material is an intangible property right and not subject to the statute. We agree with that position.[3] Thus, the only issue before this Court is whether the intangible broadcasting right is made tangible and therefore taxable when purchased at the same time as a videotape that is being used to transmit the broadcast.[4] In this case, the

---

Board of Tax Appeals regarding the value of the tape. As stated by the Court in *Draughn, supra*, "[w]ithout detailing the proof put on by the taxpayer, it was certainly ample to require a favorable conclusion in the absence of something to counter it." For more discussion of the value of the tapes, see footnote 4, *infra*.

**3.** Ownership of a copyright, or any of the exclusive rights under a copyright is distinct from ownership of any material object in which the work is embodied, and transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work.

....

Conversely, the sale or transfer of copyright ownership, or of the exclusive rights of copyright, does not in the absence of an agreement convey any right in the material object.... [Footnotes omitted.]
18 Am.Jur.2d *Copyright and Literary Property* Section 69 (1985).

**4.** The evidence presented to the Board of Tax Appeals shows that the tape itself was almost never actually purchased; rather, it was rented or borrowed (at no charge) for a very short

subject to be taxed is tangible personal property. The Cabinet argues that there is no meaningful distinction between items of tangible personal property whose object is something intangible in nature—*e.g.*, books, televisions, and radios—and the videotapes at issue here. Courts in several other jurisdictions have accepted this argument. For citations to cases accepting and rejecting this argument, see *KTVO, Inc. v. Bair*, 255 N.W.2d 111 (Iowa 1977); *Mount Mansfeld Television, Inc. v. Commissioner*, 336 A.2d 193 (1975); and Annotation, *Sales of Use Tax—Movies and Videotapes*, 10 A.L.R.4th 1209 (1981).

The basis of those holdings favorable to the Revenue Cabinet is the idea that "the right to use property cannot be separated from the property itself and the 'right' spoken of by [the broadcaster] would have no value except for the use of the tape or film—the two cannot be separated." *American Television Co. v. Hervey*, 253 Ark. 1010, 490 S.W.2d 796, 799 (1973); *Mount Mansfield T.V., Inc. v. Vermont Com'r of Taxes*, 133 Vt. 284, 336 A.2d 193 (1975). If this were true, however, broadcasters would not need licensing agreements. Broadcasters could simply go to the corner video store and rent tapes for three dollars per night. If the right to possession of the tape cannot be separated from the right to use the tape, then the broadcaster would be entitled to show such rental tapes to the public with no additional cost.

■ Obviously, the above-stated reasoning would not benefit the broadcaster in the resulting suit for copyright infringement. Quite clearly, the right to use property *can* be separated from the property itself. *See* 18 Am.Jur.2d *Copyright and Literary Property* Sections 68, 69 (1985) (citing 17 U.S.C.S. Sections 201, 202). Otherwise, copyright law simply would not exist. *See* 18 Am.Jur.2d, *supra*, Section 1. Moreover, the use of satellite technology in the broadcasting of some programs clearly shows the mistaken factual premise of the above-cited cases.

The Cabinet and the cases on which it relies have simply failed to perceive the distinction between the right to own an object and the right to make use of an object that one owns. For example, a bookstore buys individual copies of a book for resale, while a publishing house buys the right to make copies of a book; and an appliance store sells certain brand name appliances, while a manufacturer buys the right to make a brand of appliances. In each example, one party buys things and one party buys the intangible (meaning not capable of being "seen, weighed, measured, felt or touched" and not otherwise perceptible to the human senses, KRS 139.160) right to make reproductions of a thing.[5]

■ Contrary to the Cabinet's arguments, we believe it to be obvious that one who purchases a Bart Simpson t-shirt, or a Pepsi, or a Cadillac does not thereby accede to any intangible rights. *See* 18 Am.Jur. 2d, *supra*, Section 69. By purchasing a t-

---

time. The purchase or rental value of the tape itself, as instances warrant, (including the cost of the tape and the cost of putting an image on the tape) would appear to be the proper subject of the use tax on tangible personal property. We further note that the only evidence on the subject in the record indicated that the actual value of the tapes themselves was from about $25 to $85 per tape. Further, these tapes were frequently shared by as many as 25 to 30 different television stations. It is interesting to note that the only evidence presented to the Board of Tax Appeals was presented by the appellant. Evidence supporting appellant's claim that the tape itself should be valued separately can be found in the record at the following: Appellant's Exhibit 1, item C–6, page ii; Appellant's Exhibit 11, page 3; and Transcript of Evidence from the Board of Tax Appeals at pages 20, 26, 41, 63, 75–77, 82, 87, 90, 98–102, and 104.

5. We make no decision here on the applicability of KRS 139.310 to computer software. The numerous computer software cases cited by the parties seem to fall into two basic categories: 1) those cases which say that a computer disk or tape is like a book and therefore taxable as tangible property (a result which we believe to be consistent with our reasoning); *see e.g. Hasbro Industries, Inc. v. Norberg*, 487 A.2d 124 (R.I. 1985); and 2) those cases which say that computer software is intangible (a result which, although favorable to the appellant here, is at odds with our analysis; the results may be justifiable, however, on other grounds and for reasons not at issue here); *see e.g. First Nat. Bank of Springfield v. Dept. of Revenue*, 85 Ill.2d 84, 51 Ill.Dec. 667, 421 N.E.2d 175 (1981).

shirt, for example, one acquires the right to use that individual t-shirt; one does not acquire the right to make 10,000 copies and sell them to the public. The fact that the thing produced is the result of some intangible flash of inspiration by an inventor is simply irrelevant. In the case of a videotape, the right to put taped images upon the TV screens of the populace is distinct from the right, inherent in ownership of the thing, to put the tape into a VCR for one's own enjoyment. *See* 18 Am.Jur.2d, *supra,* Sections 71, 74. In light of the clear position taken by the highest courts in this Commonwealth as set forth in *City of Maysville, supra,* and its progeny, we hold that the Legislature has not explicitly and distinctly expressed an intention to tax the broadcast rights at issue here. *Cf.* KRS 132.020(2)(b); KRS 139.484 (enacted 1990); *Turner Communications Corp. v. Chilivis,* 239 Ga. 91, 236 S.E.2d 251 (1977). The Revenue Cabinet may, however, tax the properly assessed value of the videotapes themselves.

The judgment is reversed and remanded for further proceedings in conformity with this Opinion in order for the Revenue Cabinet to make a proper assessment of the value of the tape itself and services involved in putting the images on the tape. The Cabinet should make the assessment based on the value of a blank tape irrespective of any programming that may otherwise be contained thereon, plus the services actually used to place the image on said tape.

EMBERTON, J., concurs with result only.

WILHOIT, J., concurs.