CAMERA CENTER, INC., d/b/a Murphy's Camera and Video and Liberty National Leasing Company, Appellants,

v.

REVENUE CABINET, Commonwealth of Kentucky, Appellee.

No. 1999–SC–0283–DG.

Supreme Court of Kentucky.

Sept. 28, 2000.

Rehearing Denied Jan. 25, 2001.

Alan N. Linker, J. Gregory Troutman, Morris, Garlove, Waterman & Johnson PLLC, Louisville, Philip M. Moilanen, Marcoux, Allen, Abbott, Schomer & Bower, David H. Black, Jr., Bullen Moilanen Klaasen & Swan PC, Jackson, for Appellants.

Michael D. Kalinyak, Kentucky Revenue Cabinet, Frankfort, for Appellee.

WINTERSHEIMER, Justice.

This appeal is from an Opinion of the Court of Appeals which affirmed an order of the Jefferson Circuit Court which, in turn, had affirmed an order of the Board of Tax Appeals and the Revenue Cabinet's final ruling denying the claim of Camera Center, Inc. for a refund of Kentucky sales and use taxes.

The major issue is the proper interpretation of the sales and use tax exemption for machinery for new and expanded industry and what is meant by the term "plant facilities" as used in KRS 139.170(1) and 103 KAR 30:120.

Camera Center, Inc., d/b/a Murphy's Camera and Video, operates six camera stores and photo processing centers, four in Louisville, one in Lexington, Kentucky and one in Indiana. Two of the locations in Louisville have an on-site photo processing laboratory and the other locations send undeveloped film to those two locations for processing. Murphy's, through Liberty National Leasing Company, purchased new equipment for use in its photo processing operation which included various pieces of film and slide processing equipment and began developing film for profit between December 1, 1988 and December 31, 1992. Murphy's paid $5,389.49 sales tax on the equipment and filed a sales and use tax refund application with the Revenue Cabinet in 1993, claiming that the processing equipment qualified for an exemption from sales and use tax pursuant to KRS 139.480(10); KRS 139.170; and 103 KAR 30:120, as machinery for a new and expanded industry. The Revenue Cabinet denied the request for refund on the basis that the two locations where film processing occurred where not plant facilities under the regulation.

Murphy's and Liberty appealed to the Board of Tax Appeals which affirmed the denial, concluding that the facilities were primarily retail. Murphy's and Liberty then appealed to the circuit court which also denied the request and noted that the intent of the legislature was that an exemption would be provided to employers who brought voluminous industry into the state. Murphy's and Liberty then appealed to the Court of Appeals which, in a split decision, affirmed the previous denial, holding that the exemption did not apply to manufacturing equipment located in a retail facility that is not predominantly manufacturing. This Court accepted discretionary review because the matter is a question of first impression and a recur-

ring issue on which there is no Kentucky authority directly on point.

Murphy's and Liberty argue that the Court of Appeals erred in adopting the Cabinet's arbitrary and capricious interpretation of the statute; that the Cabinet's interpretation of the statute, no matter how long standing, should not control when such interpretation is not based on any statutory language; that the Court of Appeals erroneously determined that the exemption had a volume employment requirement and that the Court of Appeals erred when it affirmed the circuit court's determination that Murphy's locations were predominantly retail and erroneously failed to consider Murphy's operations as two separate businesses.

The Revenue Cabinet contends that the plant facilities requirement of the statute must present a meaningful limitation on the new and expanded industry exemption; that the Board of Tax Appeals' findings of fact are supported by substantial evidence in the record; that the definition of plant facility used by the statute to compute cost of production is inapplicable to the new and expanded industry exemption and that the Revenue Cabinet's interpretation of plant facilities is both reasonable and necessary.

The critical issue before us is whether plant facilities should be construed as a narrow term of limitation which requires that the machinery be installed at a single permanent location that is used almost exclusively for industrial manufacturing or processing which would exclude primarily retail business locations. The record here indicates that only five employees were added to the tax base of the State.

■ As always, we must consider the standard of review in reaching our decision. *WDKY–TV, Inc. v. Revenue Cabinet*, Ky.App., 838 S.W.2d 431 (1992), sets out the accurate principle that a reviewing court may not substitute its judgment for that of an Administrative Board as a finder of fact. However, an erroneous interpretation or application of the law is reviewable by the court which is not bound by an erroneous administrative interpretation no matter how long standing such an interpretation. *Cf. WDKY–TV, Inc., supra; Shockey Tours, Inc. v. Miller Transportation, Inc.*, Ky., 984 S.W.2d 95 (1998); *City of Fulton v. Shanklin*, 275 Ky. 772, 122 S.W.2d 733 (1939).

■ This Court recognizes that the burden is on the party claiming an exemption to demonstrate its entitlement to the exemptions and that they have met all statutory requirements; that exemptions from taxation are generally disfavored and that all doubts are resolved against an exemption. *Delta Air Lines, Inc. v. Commonwealth of Kentucky Revenue Cabinet*, Ky., 689 S.W.2d 14 (1985).

■ We honor the long-time phrase that an appellate court must defer to an administrative agency's interpretation of its own regulations. However, the agency cannot by its rules and regulations, amend, alter, enlarge or limit the terms of legislative enactment. *Brown v. Jefferson County Police Merit Board*, Ky., 751 S.W.2d 23 (1988). One final maxim may be found in KRS 446.080(1) to the effect that all statutes are to be liberally construed with the view to promote their objects and carry out the intent of the legislature.

## I. *Statutes and Regulations*

KRS 139.480(10) provides that machinery for new and expanded industry is exempt from sales and use tax. KRS 139.170(1) defines the term "machinery for new and expanded industry" as machinery used directly in the manufacturing process which is incorporated for the first time into plant facilities in this state.

The Revenue Cabinet's administrative regulation, 103 KAR 30:120, repeats the four requirements for the application of the statutory exemption: 1) It must be machinery; 2) It must be used directly in the manufacturing process; 3) It must be incorporated for the first time into facili-

ties established in Kentucky and 4) It must not replace other machinery.

There is no dispute that the photo processing machinery was used directly in a manufacturing process. The parties reached a stipulation in which it was agreed that the subject equipment meets all the remaining requirements of the exemption with the exception of the dispute over the definition of plant facilities. This case turns on the proper definition of the phrase "plant facilities."

## II. *Plant Facilities*

■ The Court of Appeals erred in adopting the interpretation of the Cabinet of KRS 139.170(1) because the new and expanded industry exemption is based on the type and use of machinery, not the extent of the industrial manufacturing occurring at a location. The term "plant facilities" includes more than just factories or industrial manufacturing establishments. The Court of Appeals erroneously concluded that the new and expanded industry exemption does not apply to manufacturing equipment that is located in a retail facility which is not predominantly related to manufacturing. Neither the statutes, nor the regulations, require almost exclusive use for manufacturing. The plain language of the exemption set out in the statutes indicates that the applicability of such exemption is based on the type and use of the machinery or equipment and not the extent of the industrial manufacturing occurring at a particular location. The application of the exemption is a function of the type of machinery and how it is used. New machinery that is incorporated for the first time in Kentucky and used directly and primarily in a manufacturing process is entitled to the exemption. *See Department of Revenue v. Spalding Laundry & Dry Cleaning Co.,* Ky., 436 S.W.2d 522 (1968).

The exemption was also applied to computers and monitors purchased for use in writing news stories and advertisements, editing, and to operate typesetters for a daily afternoon newspaper operation. *See Ashland Publishing Co., Inc. v. Revenue Cabinet,* Ky. Board of Tax Appeals, 1990 WL 185772 (July 12, 1990). The use of this equipment to increase productivity and competitive position was held to be sufficient without focus on how exclusive the plant was in manufacturing and in spite of the fact that the newspapers which were the end product were sold by the manufacturer at retail to its subscribers.

We are persuaded by the decision of the Maryland Court of Appeals in *State Department of Assessments & Taxation v. Consumer Programs, Inc.,* 331 Md. 68, 626 A.2d 360 (1993) which states in part:

Whether it (photo processing and finishing) is performed at a large plant in an industrial area, or at a small location in a retail area, the photo-finishing process is absolutely identical. If the process has been determined to be manufacturing for the purpose of the statute, the physical location or scale of the operation cannot change that characterization. *Id.* at 365.

Here, the Cabinet stipulated that Murphy's photo processing equipment is machinery used directly in the manufacturing process.

Because both the energy exemption and the new and expanded industry exemption are found in KRS Chapter 139, the definition of plant facilities in KRS 139.480(3) controls with respect to the new and expanded industry exemption. We must disagree with the position of the Cabinet and Court of Appeals that the definition of plant facilities found in KRS 139.480(3) applies only to the energy exemption. There is no case authority to support such a proposition.

■ As stated in *Dixon v. Caudill,* 143 Ky. 623, 136 S.W. 1043 (1911), wherever it may appear in the statutes, the definitions therein must control elsewhere, unless there be some statutory interdiction. Here, there is none. *See also Barnes v. Department of Revenue,* Ky.App., 575

S.W.2d 169 (1978). *H.G. Mays Corp. v. Revenue Cabinet,* Ky. Bd. of Tax Appeals, 1988 W.L. 153930 (Sept. 15, 1988), does not reject the definition of the term "plant facilities" as found in KRS 139.480(3). *Mays, supra,* and the cases following it, simply create an exemption to the requirement that machinery be affixed to real property. Neither the statute nor case law restricts the application of the definition found in KRS 139.480. Thus, when the definition in KRS 139.480(3) is applied to the term "plant facilities" in KRS 139.170(1), it means that more than just factories or locations exclusively and almost exclusively engaged in industrial manufacturing can be exempt.

The statutes in question do not use any terms of exclusion in reference to the term "plant facilities." If the legislature had intended to limit plant facilities to those sites where taxpayers are engaged almost exclusively in industrial manufacturing, it could have taken such a position by using words of exclusion such as "only" or "solely." Such was done in Connecticut when it limited the exemptions exclusively to manufacturing at industrial plants. *See Regulations of Connecticut State Agencies,* § 12–426–11b(a)(11), and discussed in *Stop'N Save, Inc. v. Dept. of Revenue Services,* 212 Conn. 454, 562 A.2d 512 (1989). The fact that the legislature did not use similar exclusionary language indicates an intention not to limit the new and expanded industry exemption to those businesses almost exclusively in industrial manufacturing.

The question of the common meaning of the term "plant facilities" must be considered. The circuit judge stated in part that it was common understanding that a plant or factory is a place in which manufacturing is the primary focus. The majority of the Court of Appeals stated in part that, "We do not believe that Murphy's two stores are plant facilities envisioned when the statutory exemptions were enacted by the legislature."

The term "plant" can have many commonly accepted meanings. One of the frequently used meanings of plant facilities is physical plant, such as buildings, machinery and total facilities of an institution. We are persuaded by the definition used by the Kansas Court of Appeals in the matter of *Tax Appeal of Geiger Ready Mix Company of Kansas, Inc.,* 25 Kan. App.2d 101, 958 P.2d 41 (1998), which noted with approval the language of the Kansas Board of Tax Appeals as follows:

> The words plant and facility are words of common usage .... The natural and ordinary meaning of these words is the land, building or factory at which manufacturing operations take place.

As stated in *Barnes, supra,* at 172:

> It is well settled that when there is confusion, ambiguity or doubt about the meaning of a statute, such doubt must be resolved in favor of the taxpayer.

*Brown–Forman Distillers Corp. v. Comm., Dept. of Revenue,* Ky., 346 S.W.2d 752 (1961).

■ The definition used by the Cabinet for plant facilities which was adopted by the Court of Appeals is restrictive and contradicts the legislative intent because such a definition limits the plain language of KRS 139.170(1). *Cf. Brown, supra.* As long as it is the public policy of Kentucky to permit certain tax exemptions, such a system must be uniformly and fairly applied. It is of particular importance in the modern commercial electronic area of industrial development that businesses which combine manufacturing and retail sales at a common location are eligible to be encouraged in that development by means of appropriate tax exemptions.

### III. Long Standing Interpretation

The administrative interpretation as used by the Cabinet, no matter how longstanding, does not control when such an interpretation is not based on any language of the statute. Although we respect the decisions of the agency in attempting

to administer its office, we cannot accept its administrative interpretations when they are contrary to the law. Here, the regulations of the Cabinet do not contain a definition of the term "plant facilities." The reliance of the Cabinet on long-standing administrative interpretations is misplaced. The interpretation it invokes has not been used in any public manner. As noted in *Shockey Tours, Inc., supra,* the administrative agency's interpretation of a statute, no matter how long standing, is not entitled to controlling weight if such interpretation is clearly erroneous or arbitrary. Here, the interpretation used by the Cabinet of plant facilities adds the nonstatutory requirements of volume employment and a predominantly manufacturing dedication. Both of these mandates expand the requirements of the exemption beyond the statutory language. The statute is silent as to what can occur with manufacturing and there is no authority for the Cabinet to establish prohibited activities. The Cabinet's interpretation is arbitrary because it does not correctly follow the statute.

The definition urged by the Cabinet is manifestly vague. The term 'primarily manufacturing' is not defined and it apparently is left to be decided on a case by case basis in the wisdom of the Cabinet itself.

### IV.   Volume Employment Requirement

■ The Court of Appeals, the circuit court and the Cabinet erroneously determined that there is a volume employment requirement contained in the exemption statute. They relied on two cases decided in 1968: *Commonwealth ex rel Luckett v. WLEX–TV, Inc.,* Ky., 438 S.W.2d 520 (1969), and *Spalding Laundry, supra,* for the proposition that the new and expanded industry exemption is limited to large industrial manufacturing businesses with high volumes of employment.

The critical words used by the court in *WLEX–TV, supra,* are that:

The ultimate purpose of the exemption is to enhance the competitive position of this state as against other states in encouraging the location and expansion of industries whose manufacturing processes require volume employment of people.

The language referring to volume employment is dicta. It is impossible to determine what is meant by the phrase "volume employment." We construe the language to be dicta, rather than holding, and we have no obligation to follow this vague phrase. There is no guidance or statutory support for a volume employment requirement, and any such requirement would be improper as an extension of the statutory language.

■ Industry and commerce, as well as manufacturing, have undergone significant changes since 1968. To adopt the position of the Cabinet would be to impose an antiquated concept of manufacturing limited to a type of "rust belt" approach which fails to recognize the realities of current economic conditions as well as dramatically new methods of commerce, industry and particularly marketing, resulting from the development of the electronic age. We borrow the language of *WLEX–TV* with approval as to the phrase, "The ultimate purpose of the exemption is to enhance the competitive position of this State as against other states." Such a worthwhile goal cannot be achieved without a proper interpretation of existing statutes, not to mention the necessity to develop flexible and comprehensive statutory and regulatory systems commensurate with the modern age.

### V.   Separate Business

■ It was error to determine that Murphy's locations were predominantly retail and not to consider the operations as two separate businesses. No evidence was presented that the locations at issue were predominantly retail. The stipulations indicate that the aggregate number of transactions pertaining to manufacturing or photo processing activities exceeds the ag-

gregate number of retail transactions in any given year.

We must reject the position of the Revenue Cabinet, despite the excellent brief and skillful oral argument of its counsel. This Court is very familiar with the Kentucky authorities cited by the Cabinet's counsel, but such authorities cannot be properly applied in the context of this case.

This case may be considered by some to be a gap or loophole in the law. Practitioners should not overreact because the legislature can easily choose to close a tax exemption window of opportunity either in whole or in part. Certainly the legislature could determine that a volume of employment requirement should be inserted into the statute. The legislature could define plant facilities differently or specifically address combined manufacturing and retail sales facilities.

In this matter, we must conclude that the action of the Revenue Cabinet was arbitrary, capricious and a misinterpretation of the statute as it exists at this time. Consequently, the opinion of the Court of Appeals is reversed and this matter is remanded to the circuit court with directions to enter a judgment in favor of Camera Center, and to grant the appellants the refund sought, as well as appropriate interest, if any, or other relief which may be proper.

LAMBERT, C.J., KELLER, STUMBO and WINTERSHEIMER, JJ., concur.

GRAVES, J., dissents by separate opinion in which COOPER and JOHNSTONE, JJ., join.

GRAVES, Justice, dissenting.

Respectfully, I dissent.

Appellant, Camera Center, Inc., operates five camera stores in Kentucky under the name Murphy's Camera & Video (hereinafter "Murphy.") Two stores process undeveloped film and serve as film processing centers for the other three stores. The two film processing centers in Kentucky also offer retail sales of cameras, film, and other photography equipment, such as tripods and camera bags. These stores were solely retail camera stores prior to purchasing the processing equipment in 1988.

From Dec. 1, 1988, to Dec. 31, 1992, Murphy paid Kentucky sales tax on purchases of photo developing machinery. After paying taxes for four years, Murphy filed for a refund with Appellee, the Revenue Cabinet, to recover the sales tax on the photo developing machinery it purchased for use in the two camera stores with processing equipment, claiming that the machinery qualified for the New and Expanded Industry Exemption. KRS 139,480(10) [1], KRS 139,170(1) [2], and KAR 30:120(1) [3].

The Revenue Cabinet denied Murphy's claim on the grounds that the two camera stores were not "plant facilities" as that term is used in KRS 139.170(1) and KAR 30:120(1). While KRS 139.170(1) never defines "plant facilities," the Revenue Cabinet for years has interpreted "plant facilities" to mean "a single permanent location that is used almost exclusively for industrial manufacturing or industrial processing activities and does not include locations which are used primarily for retail activities." Finding that Murphy's stores were

1. KRS 139.480(10) exempts "machinery for new and expanded industry" from Kentucky sales and use tax.

2. KRS 139.170(1) defines "machinery for new and expanded industry" as "machinery used directly in the manufacturing process, which is incorporated for the first time into plant facilities in this state."

3. 103 KAR 30:120 repeats the four requirements for application of the statutory exemption:

    1. It must be machinery;
    2. It must be used directly in a manufacturing process;
    3. It must be incorporated for the first time into plant facilities in Kentucky; and
    4. It must not replace other machinery.

predominantly retail, the Revenue Cabinet determined Murphy did not qualify for the exemption. Murphy appealed this ruling to the Kentucky Board of Tax Appeals, which also held that the stores are not plant facilities, as did the Franklin Circuit Court and the Kentucky Court of Appeals. The Court of Appeals' holding was based, in part, on the proposition that the statute was enacted as a way to encourage volume employers to Kentucky.

Murphy argues that the operative language in the second clause of the definition of "machinery for new and expanded industry" is that which deals with incorporation for the first time. The thrust of Murphy's argument is that anyone who engages in manufacturing, which both Murphy and the Revenue Cabinet have stipulated that Murphy does, and who incorporates machinery used directly for that process into its Kentucky facilities for the first time, is entitled to the exemption. However, this interpretation effectively nullifies the "plant facilities" language in the statute. There are two reasons Murphy's interpretation is unsound. First, statutes should be construed, if possible, to leave no part meaningless or ineffective. *See Brooks v. Meyers,* Ky., 279 S.W.2d 764 (1955). Had the legislature intended Murphy's interpretation, it would have omitted the "plant facilities" language. Second, while neither this Court nor the legislature has ever defined "plant facilities" within the context of KRS 138, 170, we held in *Revenue Cabinet v. Kentucky–American Water,* Ky., 997 S.W.2d 2, 5 (1999), that the statute has two requirements: the machinery must be used directly in a manufacturing or processing production process and it must be installed in a plant facility. Thus, this case turns on the meaning of "plant facility."

Statutes should be construed with two guiding principles in mind. First, under KRS 446.080(4), the legislature has directed us to look "to the common and approved usage of the language." We reiterated this proposition in *Gateway*

*Construction Co. v. Wallbaum,* Ky., 356 S.W.2d 247, 249 (1962), stating that words must be given their "usual, ordinary, and everyday meaning." Furthermore, statutes should be construed according to legislative intent. KRS 446.080(1).

The problem with determining the everyday usage of the words "plant" and "facility" is that they are vague, over-used words in themselves. A number of dictionaries agree that "facility" is either "something that promotes the ease of any action, operation, transaction or course of conduct," *see* Webster's Third New International Dictionary 812 (1993), or "something designed, built, installed, etc. to serve a specific function affording a convenience or service," *see* Random House Unabridged Dictionary 690 (2d ed.1987). Several dictionaries define "plant" by specifically mentioning a factory or industrial setting. *See* Merriam–Webster's Collegiate Dictionary 890 (10th ed.1999); The American Heritage Dictionary 948 (2d ed.1991); Webster's Third New International Dictionary, *supra;* and Random House, *supra.* These definitions bolster the Revenue Cabinet's position that "plant facilities" means "a single permanent location that is used almost exclusively for industrial manufacturing or industrial processing activities and does not include locations which was used primarily for retail activities."

Moreover, legislative intent supports the Revenue Cabinet's position. In *Commonwealth ex rel Luckett v. WLEX–TV, Inc.,* Ky., 438 S.W.2d 520 (1969), this Court visited this question in 1960, shortly after the statute was enacted. For its decision in the instant case, the Court of Appeals relied upon our reasoning in *WLEX–TV, Inc.,* where we clearly enunciated the reasons for the exemption: "The ultimate purpose of the exemption is to enhance the competitive position of this state as against other states in encouraging the location and expansion of the industries whose manufacturing process requires volume employment of people." *Id.* at 522. Em-

ploying a total of five people at a camera store who work interchangeably between the processing and retail areas is hardly the type of expansion that the legislature contemplated when enacting a statute which deprives the state of revenue. Our holding in *WLEX–TV, Inc.* thirty years ago provides the basis for the Revenue Cabinet's interpretation of the statute. Most importantly, the legislature has not changed or modified the exemption in any manner during the many years of its application.

As long as exemptions are not arbitrary or unreasonable, the legislature may make classifications and limitations for tax exemption purposes. *See Department of Revenue v. Spalding Laundry and Dry Cleaning Co.*, Ky., 436 S.W.2d 522, 523 (1969). In *Spalding Laundry*, the issue was the meaning of the "manufacturing" requirement. We stated:

> [I]t is peculiarly a matter of legislative selection, in balancing the public benefits against the tax loss, to determine what type of industry will best promote the general welfare. Considering the public purpose involved, surely the legislature could distinguish between large plants and small plants.

> It is entirely reasonable for such a body to conclude that the development of manufacturing plants would have a greater impact on the state economy than the development of other industries.

*Id.* at 524.

The "plant facilities" requirement can be used just as easily as the "manufacturing" requirement to further the legislature's goal.

By limiting the statute to machinery used in primarily industrial settings, Murphy argues that the lower courts adopted an outdated mentality which ignores vertically integrated industries engaged in both retail and manufacturing. However, these are precisely the settings which the legislature contemplated in enacting the stat-

ute. Were they not, the legislature has had more than ample opportunity to clarify the issue during the past forty years, particularly since the Revenue Cabinet has consistently interpreted the statute with an eye toward larger industries. It is the function of the legislature, not this Court or Murphy, to change the statute's intent.

Murphy also argues that the definition of "plant facilities" set forth in KRS 139.480(3), should be applied in interpreting KRS 139.170. However, the definition of "plant facilities" in KRS 139.480(3) does not logically work with KRS 139.170. KRS 139.480(3) exempts "all energy or energy-producing fuels used in the course of manufacturing, processing, mining, or refining to the extent that the cost of the energy or energy-producing fuels used exceeds three percent of the cost of production." Cost of production is based on the extent of the "plant facilities," which are defined as "all permanent structures affixed to real property at one location." *Id.* But this definition only describes the limitations on energy to be included under the exemption and not the requirements for a "plant facility." For example, in *Revenue Cabinet v. James B. Beam Distilling Co.*, Ky., 798 S.W.2d 134 (1990), we held that Beam could use "all permanent structures affixed" to its distillery to compute its energy tax exemption, while excluding its separate warehouse and bottling plants. This definition of plant facility limits energy computation only; it is not a test for whether a location is a "plant facility" within the meaning of KRS 139.170. If it did act as such a test, the definition would exclude nothing so long as it was affixed to one location, making the use of "plant facilities" in KRS 139.170 superfluous, which, once again, is impermissible under our holding in *Kentucky–American Water Co.*, *supra*, and *Brooks, supra*. Murphy's line of reasoning with regard to KRS 139.480(3) would also conflict with the Board of Tax Appeals' decision in *H.G. Mays Corp. v. Revenue Cabinet*, Ky. Bd. Tax.App., Dkt K88–R–1, Order No. K–12078, 1998 WL 153930 (Sept. 15, 1988), in

which the Board determined that mobile concrete mixers mounted onto trucks, and obviously not affixed to one location, were not excluded from the new and expanded industry exemption merely because they were not permanently affixed to real property.

In light of the ambiguity cast by the above arguments, it is worth noting that this Court has held that "exemptions from taxes are disfavored" and "all doubts are resolved against any exemption ." *See Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet,* Ky., 689 S.W.2d 14, 18 (1985). Furthermore, "in construing an ambiguous statute, the Court will give great weight to long-continued constructions and applications by authorities entrusted with its administration." *See Allphin v. Joseph E. Seagram & Sons, Inc.,* Ky., 294 S.W.2d 515, 517 (1956). The Revenue Cabinet points out that its interpretation of KRS 139.170 is long-standing. We certainly know it has been so held between these parties since 1989, when the Revenue Cabinet sent a letter to Murphy's counsel in an unrelated matter which stated:

A plant facility means a single permanent location that is used almost exclusively for manufacturing or industrial processing. A facility in which a machine or group of machines produce [sic] tangible personal property in conjunction with a service or retail enterprise does not constitute a "plant facility." Thus, a location used almost exclusively for photo finishing which results in ' finished products such as negatives, prints, slides or movies would constitute a plant facility. However, retailers such as shopping center photo shops or photographers which perform photo processing functions would not constitute a plant facility, and would not qualify for the exemption.

Expanding the term "plant facilities" to include the photo processing areas of two camera stores, which are predominantly retail sales centers, in an attempt to shoehorn their equipment purchases into a tax

exemption for new and expanded industry, goes well beyond the legislative intent of KRS 139.170. In the absence of the legislature providing a definition, the Revenue Cabinet administered its tax exemption policy based on its own definition, which coincided with legislative intent and common usage. Under *Allphin, supra,* it is not this Court's place to overturn that definition.

COOPER, J. and JOHNSTONE, J., join in this dissent.